CASE 85—PETITION EQUITY—FEBRUARY 5.

# Beard v. Sharp.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. LIFE INSURANCE—SPECULATIVE INSURANCE—BENEFICIARY.—A certificate of life insurance in a mutual benefit society, by the laws of which beneficiaries can only be members of the insured's family, or those dependent on him, if made payable to one who has no interest in the life of the insured, is void. But, if made payable in part to a stranger and in part to a legal beneficiary, it is not void, and the legal beneficiary is entitled to the whole fund at the death of the insured. (Caudell v. Woodward, 96 Ky., 646.)

2. SAME.—Where the legal beneficiary, who held a certificate of insurance on the life of his mother, which he had been paying assessments on for some years, found that he could do so no longer, agreed with a stranger who had no interest in the life of the insured, that if he would pay the assessments during the remainder of the life of the insured, that he would give him one-half of the insurance, and had a new certificate of insurance issued, payable one-half to each of them, and at the death of the insured the stranger collected the insurance money and retained one-half of it, the legal beneficiary is entitled to recover from him all the money so retained, except the amount of the actual assessments paid by him.

3. IN PARI DELICTO.—Under such circumstances, the legal beneficiary is not guilty of any such fraud, or act involving moral turpitude, as prevents his recovery from the stranger.

T. T. FORMAN FOR APPELLANT.

1. On the question that maxim "in pari delicto," etc., does not apply Cammack v. Lewis, 15 Wall., 643 (82 U. S., 244); Warnock v. Davis, 14 Otto, 775 (104 U. S., 924); Basye v. Adams, 81 Ky., 368 (cites above cases with approval); Martin v. Richardson, 94 Ky., 183.)

2. The following cases relied on by appellee are cited and their want of application to case at bar is discussed. (Ford's Ex'or v. Lewis, 10 B. M., 127; Laughlin v. Dean, 1 Duv., 20; Creekmore v. Chitwood, 7 Bush, 318; Ratcliff v. Smith, 13 Bush, 173.)

3. Appellee Sharp having no insurable interest in the life of Julia Beard, the assured, his nomination as a beneficiary in the certificate was void, a mere wager policy. (See Act of Incorpora-

Beard v. Sharp.

tion Supreme Commandery U. O. G. C., its title, its object; see also pp. 67 and 68 of its constitution; see also pp. 70 and 71, its amended charter; Basye v. Adams, 81 Ky., 368; Franklin Fire Insurance Co. v. Hazzard, 13 Am. Reps., 313; Bankers, etc., Association v. Stapp, 19 Am. State Reps., 772; Knights of Pythias v. Schmidt, 98 Ind., 374; American Legion v. Perry, 140 Mass., 580; Manly v. Knights of Birmingham, 115 Pa. St., 305; Elsey v. Odd Fellows, &c., 142 Mass., 224; Conn M. L. Insurance Co. v. Schaefer, 94 U. S., 457; Bliss on Life Insurance, sec. 27.)

4. The designation of beneficiaries must be made in the mode provided, and a person not of the class for whose benefit the association is authorized can not be designated. (National Aid Society v. Lupold, 101 Pa. St., 111; Elliott v. Whedbee, 94 N. C., 115; Michigan, &c., Association v. Rolfe, 76 Mich., 146; Mutual Benefit Association v. Hoyt, 46 Mich., 473; National Aid Association v. Gouser, 43 Ohio St., 1; Britton v. Supreme Council, 46 N. J. Eq., 102; Keene v. Grand Lodge, A. O. U. W., 38 Mo. App., 543.)

5. Where the charter provides relatives or dependents are to be named as beneficiaries, creditors or persons not related can not be named as beneficiaries. (Worley v. Northwestern, &c., Aid Association, 10 Fed. Rep., 227; Elsey v. Odd Fellows, &c., Association, 142 Mass., 224; State v. Peoples, &c., Association, 42 Ohio St., 579; State v. Standard, &c., Association, 38 Ohio St., 281; Van Bibber v. Van Bibber, 82 Ky., 347.)

6. If the second certificate is held void as to Sharp, then the other beneficiary named being a son, is entitled to the entire proceeds of certificate; and if the second certificate is held to be entirely void, then the son would still take the whole, as he was the sole beneficiary named in the original certificate. Administration upon the estate is unnecessary. (Caudell v. Woodward, 96 Ky., 648; Currier v. Continental Life Insurance Co., 52 Am. Reps., 134; see note to this case pp. 146, 147, 148; Northwestern Masonic A. A. v. Jones, 35 Am. St. Reps., 814; see note on said page; Leaf v. Leaf, 92 Ky., 167; Ky. Masonic L. Insurance Co. v. Miller, 13 Bush, 490.)

7. Wagering contracts are not favored either in Kentucky or Tennessee, the charter in question emanating from Tennessee. (Beadles, Wood & Co. v. McElrath & Co., 85 Ky., 230; Milliken & Vertrees, 1884 Ed. Tennessee Code, Statute on Gaming.)

F. C. ELKIN ON SAME SIDE.

1. The decedent, who was the member of the benefit association, having failed to designate in the second certificate any other valid beneficiary than appellant, the original certificate in which

appellant was designated as sole beneficiary remains in full force and effect, and he is entitled thereunder to the whole fund. And that being so no administration upon her estate was necessary, to enable him to collect it. (Vieener v. Grand Lodge, 38 Mo. App., 543; Arthur v. Odd Fellows' Association, 29 Ohio St., 557; 19 Amer. St. Reps., 789 and authorities cited.)

H. MARSHALL BUFORD FOR APPELLEE.
   (No brief in the record.)

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

The plaintiff Beard alleged that in 1881, he procured his mother, Julia Beard, to apply to the Supreme Commandery of the United Order of the Golden Cross for insurance upon her life for his sole benefit; that on the 8th day of February, 1881, there was issued upon said application a benefit certificate upon the life of said Julia Beard, payable upon her death to the plaintiff out of the benefit fund of said association, alleging further that the United Order of the Golden Cross was a regularly incorporated insurance company under the laws of the State of Tennessee, having for its purpose co-operative life insurance, and by assessment upon its members to create a benefit fund, and with authority to pay out the same upon the death of a member to the family of such deceased member, the amount of said benefit certificate. Plaintiff files a copy of the charter of said company. Law 2, section 2, of said charter provides that applicants shall enter upon the medical examiner's blank the names of the members of his family or those dependent upon him to whom they desire their benefit certificate paid, and the name shall be entered in the benefit certificate.

The plaintiff alleges that he paid all the dues and

assessments upon the benefit certificate above mention-
ed from the time it was issued to him to the 9th of
December, 1893; that he had paid out in the aggregate
to keep said benefit certificate alive the sum of $923.70;
that about this time, owing to financial distress, he
was unable to pay the assessments and applied to the
defendant Sharp for assistance and offered to assign
him a fourth interest in the benefit certificate if he
would pay the dues and assessments upon the policy
from that time on as long as Julia Beard might live.
The defendant declined this, but said he would take it
on the terms proposed if the plaintiff would agree to
give him one-half of said benefit certificate. He alleges
that at the instance of defendant he surrendered his
certificate issued in 1881, and the defendant induced
the mother of the plaintiff in 1893 to ask for a cancella-
tion of the benefit certificate of 1881, and for the issu-
ance of another wherein the plaintiff and the defendant
were both named as beneficiaries, one-half each.   In
accordance with said application, the company issued
another benefit certificate on December 9, 1893, on the
life of said Julia Beard, wherein J. B. Beard, the plaint-
iff and son of Julia Beard, and S. G. Sharp, the defend-
ant, named as friend, were to have one-half each of said
benefit certificate, and the old certificate was surren-
dered up to the company by defendant, and the pro-
visions of the latter were accepted by the deceased in
writing on the face thereof.   The new certificate was
delivered to and held by the defendant until the death
of Julia Beard, which occurred on the 16th day of
January, 1894.

Defendant, pursuant to his agreement, paid all the dues and assessments chargeable against said certificate from December 9, 1893, up to February, 1894, amounting to $37.80. Due proof of the death of Julia Beard being made and the benefit certificate of December 9, 1893, having been surrendered, the company issued its draft for $2,000, the amount of the certificate, payable to the order of both plaintiff and defendant, which money was collected by the defendant, the latter retaining $1,000 of said sum and paying over to the plaintiff the other $1,000.

It is further alleged that defendant Sharp was not of kin to Julia Beard, nor a creditor of hers, nor in any manner interested in the continuance of her life, and that he assumed the payment of the assessments on the certificate from the 9th day of December, 1893, as a mere speculation with the hope of realizing a large profit by the early death of Julia Beard. Plaintiff claims that the agreement made with Sharp by which he became a beneficiary under the certificate, was contrary to public policy and void; that the withholding by Sharp of the $1,000 realized from said certificate was illegal, and that same properly belonged to plaintiff, less the sum of $37.80, with interest thereon, the money paid out by Sharp. He further alleges that at the time the benefit certificate was collected that it was managed by the defendant, and that he did not know his legal rights at the time he accepted the $1,000 from said Sharp as his part of said benefit certificate.

The defendant filed a general demurrer to plaintiff's

petition, which was sustained by the court below, and plaintiff declining to plead further, the court dismissed his bill. Plaintiff at the time excepted, and brings his appeal to this court and asks a reversal.

It has often been held by this court that a party who has no insurable interest in the life of another can not sue for or recover on a policy of insurance which has been issued to him, and that he can only collect and hold the insurance money to the extent that the deceased may be indebted to him. This court, in the case of Caudell v. Woodward (96 Ky., 646), has passed upon the rights of parties under circumstances almost identical with the case at bar. In that case Matilda Woodward was a member of the United Order of the Golden Cross and the benefit certificate of Mrs. Woodward was payable to her son, James Woodward, one-half, and one-half to her friend Katherine Caudell. In the contest over the fund the court below adjudged the whole of it to the son. That opinion construed the provisions of the charter of the company under facts similar to those in this case, and held that the beneficiary of a certificate identical with this must be one of the members of the family or one dependent upon him, holding further that any other construction would open the flood-gates of speculative insurance and frustrate the humane and generous purposes of the order. The member might direct the beneficiary of the certificate, but must do so within the restrictions contemplated by the organic law of the society, and confine his choice to some member or

members of his family, or some one or more of those dependent upon him. We construe the organic law of the order, therefore, as limiting the choice or direction of the applicant as provided in the constitution and requiring him to name a member of his family or some one dependent upon him as the beneficiary of the benefit certificate; holding, moreover, that if the law of the order were so construed as to allow a member to name a stranger the certificate would be void as to the stranger, for nothing is better settled in this state than that one obtaining a policy of insurance on the life of another must have an insurable interest in the life of that other, and that the stranger does not obtain the insurance, but the assured voluntarily does so for the other's benefit, was held to embody the dangerous principle of allowing speculative insurance.

The court further held in that case that the contract of insurance was not invalidated by the designation of a person prohibited by the law to be a beneficiary, but that the member of the family named jointly with the stranger was entitled to the whole fund. (See Cook on Life Insurance and Benefit Societies, page 106, and the case of Weigelman v. Bronger, 96 Ky., 132.) The only difference between that case and the case at bar is that there the money had not actually been paid over by the insurance company and the contest was as to whom the fund belonged, whilst in this case the money has been actually paid and divided, and the appellee seeks to defeat responsibility on the plea that the arrangement under which the appellant and

the appellee Sharp became joint beneficiaries under the benefit certificate of 1893, was against public policy and void; but that as the contract had been executed and that both appellant and appellee were parties to said contract, they were *in pari delicto* and therefore equity would not relieve either party against the other, but would leave both parties exactly where it found them, because both were equally at fault. The maxim, *in pari delicto portior est defendentis* has been supported by the uniform current of decisions of this court and of the courts of nearly every state in the union, but the question involved is whether that doctrine should be applied in this case. The appellate court in the case of Ford's Adr., v. Lewis (10 B. M., 127.), where Lewis, for the purpose of hiding his property from his creditors, conveyed same to Ford, held that no trust resulted, as the grantor acted fraudulently and without consideration, and that therefore it left the parties in *statu quo*. Another case was that of Laughlin v. Dean (1 Duvall, 20). In that case it was held that the public policy forbids the courts to aid either party in a contract for the sale of Confederate money. In another case, that of Creekmore v. Chitwood (7 Bush, 318), the court held that a contract for moonshine brandy, made and sold in violation of the revenue laws, was void, and declined to interfere. In the case of Radcliffe v. Smith (13 Bush, 173), the court held that a contract between the principal and his surety on a bail bond, whereby the principal conveyed lands to the surety in consideration of the surety's agree-

ment that the principal might leave the state and fail to answer the charge against him, was unlawful and against public policy, and that the parties were in *pari delicto;* and therefore the petition of the principal to have the deeds declared mortgages ought to have been dismissed by the court.

It has been pointed out that in all these cases there was an element of moral turpitude which involved the nullification of the laws of the state. Now, does the case at bar come within the class of these adjudicated cases? The law holds that the contract of insurance by which the defendant became a beneficiary under the benefit certificate on the life of Julia Beard, a stranger in blood, and not as debtor, was against public policy because it was a wagering contract; but, while such a contract might lead to crime, it was not necessarily criminal as in all other cases cited above in which this principle of law has been invoked and sustained by this court. In all the above cases the party complaining was equally at fault with the defendant, but is that so in the case at bar? He had an insurable interest in the life of his mother and had carried this insurance for thirteen years at heavy expense to himself. His necessities compelled him to borrow money on some terms, to prevent the loss of the whole policy, to keep up the assessments. There was nothing criminal in this. The appellant was a necessary party to the making of the contract by which the second certificate was issued; its terms and conditions were all suggested and executed by the appellee.

The latter's only motive in entering into the arrange-
ment was gain, whilst the appellant sought to save
what he had already invested in carrying the said
benefit certificate from 1881 to 1893, and only acceded
to the terms of appellee under the pressure of poverty
and dire necessity.

In the case of Carmack v. Lewis (15 Wallace, 643),
the court used this language: "John E. Lewis, the
husband of complainant, who sues as administratrix,
being indebted to Carmack in the sum of $70, and
being in bad health, procured at Carmack's suggestion
the insurance of his life in the New Jersey Mutual
Life Insurance Company for $3,000. Carmack paid
the premium for the first year and took an assignment
of the **policy** from Lewis to himself. He also took from
Lewis a note for $3,000, which he admits was without
consideration, and he had Lewis' note for $70, the in-
debtedness really due. Lewis died before the expira-
tion of the first year, and Carmack collected from the
insurance company the $3,000, and paid over one-third
of that sum, less the amount of the premium paid by
him, to the widow of the deceased, and this suit was
brought to recover the balance of the $3,000." Carmack
alleged that the policy was taken out under an agree-
ment between Lewis and himself and that he should
pay the premium for the seven years the policy was to
run, and in consideration of those payments and what
Lewis owed him that he should, in the event of Lewis'
death during the life of the policy, receive two-thirds
of the amount of the policy and pay over the other

third to his wife and heirs. The court held that under these circumstances Carmack could, in equity and good conscience, only hold the policy as security for what Lewis owed him when it was assigned and such advances as he might afterwards make on account of it, and that the assignment of the policy was valid only to that extent, and decreed that he should pay over the balance after deducting this sum. The court further held that they did not see such evidences on the part of decedent of a corrupt transaction as to forbid the court from doing justice between the administratrix and Carmack after the amount secured by the policy had been paid by the company to the latter; and it further held that "The receipt of the one-third of the insurance money by the complainant does not, we think, under all the circumstances of the case, conclude her as a settlement of the matter in dispute. It is obvious that she was ignorant of the full extent of her rights."

Warnock v. Davis (104 United States, 924), was a case where decedent applied to Protection Life Insurance Company for a $5,000 policy on his life, and on the same day agreed with Scioto Trust Association that if the latter would pay all dues and assessments on said policy that he would assign nine-tenths of said policy to said trust association, the other one-tenth to be paid to Crosser's widow, and such assignment was made. Crosser died, and said trust association collected the $5,000 and paid one-tenth ($500 to the widow), and Warnock as administrator of Crosser sued the

association for the balance after deducting the $500 and dues and assessments paid by said association. The Supreme Court in deciding this case held that the policy executed on the life of the deceased was a valid contract and as such was assignable by the assured to the trust association as security for money lent to him or advanced for premiums and assessments upon it, but that it was not assignable to the association for any other purpose. The association had no insurable interest in the life of the deceased and could not take out a policy in its own name, as it would be a mere speculative contract on the life of the assured; and, although the agreement between the trust association and the insured was invalid in so far as it provides for an absolute transfer of nine-tenths of the proceeds of the policy upon the conditions named, it was not of that fraudulent kind with respect to which the courts regard the parties as alike culpable and refuse to interfere with the results of their action. No fraud or deception upon any one was designed by the agreement, nor did its execution involve any moral turpitude. It was one which must be treated as creating no legal right to the proceeds of the policy beyond the sums advanced upon its security; and the courts will, therefore, hold the recipients of the money beyond those sums to account to the representative of the deceased." The court further held in that case that "It was lawful for the association to advance to the assured the sums payable to the insurance company on the policy as they became due, and it was also law-

ful for the assured to assign the policy as security for their payment. The assignment was only invalid as a transfer of the proceeds of the policy beyond what was required to refund those sums, with interest. To hold it valid for the whole proceeds would be to sanction speculative risks on human life and encourage the evils for which wager policies are condemned." The court directed a judgment for plaintiff for the amount collected from the insurance company, with interest, after deducting the sums already paid to the widow and the sums advanced by the defendant.

In the case of Martin v. Richardson, 94 Ky., 183, Martin had sold to Richardson a lottery ticket. After the drawing he noticed that same had drawn a prize. He then went to Richardson and, concealing from him this fact, induced the said Richardson by artifice and subterfuge to exchange this ticket with him for another ticket in another lottery. The facts coming to the attention of Richardson, he brought suit to recover the amount of the prize drawn on said ticket. In passing upon this question the court held that dealing in lottery tickets was a violation of law, and that if the action had been on the ticket for the prize no relief would have been granted; but the money having been collected and in the hands of Martin by reason of frauds practiced on Richardson, the latter was allowed to recover, the court in passing on the case using this language: "Not all contracts in which both parties are at fault are to be held to be so equally, but the court will, in certain cases, even when both appear to

be at fault, inquire as to where the greater blame rests and grant relief to the one less in fault."

In the case at bar the appellee holds $1,000 of the money collected on the aforesaid benefit certificate under a contract which he could not have enforced against the company in his own name, except to the extent he had in good faith advanced money to pay the accrued assessments, but, as the court held in the case of Caudell v. Woodward, *supra*, the contract of insurance was not invalidated by the designation of appellee as one of the beneficiaries under same, he being a person prohibited by law to be a beneficiary. The appellant in this case could have maintained an action against the insurance company to recover on the certificate, and he would have been entitled to a judgment for said fund. It seems to us that the appellee in this case could have legally held the benefit certificate for no other purpose, than as security to indemnify him for moneys advanced to pay the premium and to be so advanced, and to this extent his claim to said policy was just; but all overplus of said fund he holds as trustee for the benefit of the appellant in this action, and under an implied obligation to pay over same.

For the reasons indicated herein, it seems to us that the petition of plaintiff in this case states a good cause of action if the facts are as alleged, and that the lower court erred in sustaining the demurrer to same.

Wherefore this cause is remanded for proceedings consistent with this opinion.