CASE 66—ASSIGNMENT OF INSURANCE POLICY—MAY 4.

## Barbour's Administrator v. Larue's Assignee, Etc.

APPEAL FROM LARUE CIRCUIT COURT.

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—INSURANCE POLICY.—Until a policy of insurance has been carried to a point where under the terms of the policy itself it has a value, it does not pass to an assignee for the benefit of creditors under a general clause embracing "any property, accounts or claims not herein mentioned."

2. INSURANCE POLICIES—ASSIGNMENT—INSURABLE INTEREST.—The assignment of an insurance policy as indemnity to a surety is valid only to the extent such surety may pay the assignor's debt.

D. H. SMITH FOR THE APPELLANTS.

1. The interest of Larue in the policies of life insurance did not pass to the assignee under the deed of assignment.

2. The assignee is estopped by his conduct to claim the benefit of the policies.

Citations: 1 Biddle on Ins., 183, 271, 281; May on Ins., vol. 1, secs. 102, 175, 189, 440; 2 Story Eq., secs. 1538, 1539, 1542; 2 May on Ins., secs. 385, 391, 596; Bishop on Insolvent Debtors; Cook on Life Ins., sec. 77; Bigelow on Estoppel, 59, 60, 61, 62,

Barbour's Admr. v. Larue's Assignee, &c.

476, 478, 487, 496, 498, 500, 501, 510, 524, 530, 540, 556, 578; Herman on Estoppel, 476; 6 Cush., 286; 49 Hun., 192-3; 16 Ky. Law Rep., 398, 286; 17 Ky. Law Rep., 313, 657; 95 Ky., 464; 93 Ky., 358; 89 Ky., 110; 86 Ky., 223; 81 Ky., 368, 375; 3 Litt., 56, 351; 14 Bush, 193; 5 J. J. Mar., 566; 4 Met., 352; 3 Bush, 361, 490, 702; 6 B. M. 113; 8 Bush, 645; 17 N. Y., 580; 28 Barb., 333; 2 Hill, 275; 37 Barb., 184; 4 Sandf., Ch., 498; 7 Daly, 52; 19 Fla., 448; 7 East., 335; 27 Barb., 395; 9 Bing., 332; 8 Mass., 515; 101 Mass., 565; 152 Mass., 343; 104 U. S. Rept., 777; 41 Ind. Rept., 116; 36 Kan., 146; 15 Fed. Rep., 536; 15 L. R. Eq., 26; 13 L. R. Eq., 158, 188; 13 L. R. App. Cas., 570; 10 Irish Repts. (Eq.), 117.

E. E. McKAY on same side.

This court has heretofore held in this case that before the assignee can recover the amount in these policies he must show:
1. That Larue intended the policies for his creditors.
2. That they had a surrender value.
3. That the policies were a basis of credit.
4. That the policies were made payable to his creditors as alleged in the petition, and
5. That Larue paid the premiums.
The assignee has wholly failed to show these points.
Citations: Larue v. Larue, 96 Ky., 326; Dushane v. Beall, 161 U. S., 514.

I. W. TWYMAN and J. P. HOBSON for appellees.

1. Absolute assignment of life insurance policies to one without interest or beyond interest is void. Basye v. Adams, 81 Ky., 368; Settle v. Hill, 5 Ky. Law Rep., 691; Weigelman v. Bronger, 16 Ky. Law Rep., 400; Coudell v. Woodward, 16 Ky. Law Rep., 742; Equitable Ins. Co. v. Hazelwood, 16 Am. St. Rep., 906.
2. Non-payment of notes for balance of cash first payment recited in policies did not avoid them. Griffith v. N. Y. Life Ins. Co., 101 Cal., 627; s. c. 40 Am. St. Rep., 96; Brooklyn Life Ins. Co. v. Miller, 12 Wall., 285; Krause v. Equitable Life Asso., 99 Mich., 461; Wytheville Ins. Co. v. Seiger, 90 Va., 277.
3. Assignee can not consent to spoliation of trust estate. Burrill on Assignments, secs. 238, 241, 352; Cox v. Osborne, 1 Mar., 311; Ormsby v. Tarascon, 3 Litt., 410; Briggs v. Davis, 75 Am. Dec., 363; Ingram v. Kirkpatrick, 51 Am. Dec., 428; McIlhinney v. Todd, 10 Am. St. Rep., 753; Gibson v. Chedick, 90 Am. Dec., 508, note; Scull v. Reeves, 29 Am. Dec., 694, 707.
4. Only insurance company can raise question that assignment was made without consent or written notice to it. Bacon on Benefit Societies & Life Ins., sec. 298; N. Y. Ins. Co. v. Flack, 56 Am.

Dec., 750; May on Ins., 396; Wood on Ins., sec. 361; Lee v. Murrell, 9 Ky. Law Rep., 104.

5. The assignee may maintain this action. Ky. Stats., sec. 84; 2 Black on Judgments, 3548, 726; Freeman on Judgments, sec. 158; VanFleet on Former Recovery, sec. 256.

6. As to the assignee's rights on the whole case. Larue v. Larue, 96 Ky., 326; Burrill on Assignments, sec. 65; Butler v. Golrey, 146 U. S., 303; Williams v. Heard, 140 U. S., 529; Bacon on Benefit Societies & Life Ins., sec. 297; May on Ins., secs. 388, 389; 86 N. C., 260.

7. As to the admissibility of parties in interest as witnesses as to what Larue said and did, he being dead. Burrill on Assignments, sec. 362; Flood v. Pragoff, 79 Ky., 607; Phillips v. Phillips, 81 Ky., 328; Williams v. Williams, 90 Ky., 28; 1 Wharton on Evidence, secs. 466, 470, and cases cited.

8. Appellants should be charged with interest on the money they received. Masonic Savings Bank v. Bangs, 10 Ky. Law Rep., 743; Kenton Ins. Co. v. First National Bank, 93 Ky., 129; Henderson Manufacturing Co. v. Lowell Machine Shops, 86 Ky., 668.

W. S. PRYOR on same side.    (J. P. HOBSON of counsel.)

1. The assignment of Barbour & Daugherty was valid only to the extent of their debt; beyond that they have no interest in the life of Larue. Basye v. Adams, 81 Ky., 368; Burnam v. White, 16 Ky. Law Rep., 241; Throckmorton v. H. M. B. S., 4 Ky. Law Rep., 61; Warnock v. Davis, 4 Ky. Law Rep., 67, and cases cited. Any surplus would enure to the benefit of the creditors equally.

2. The former appeal of this case is conclusive against the contention of appellants upon all other points discussed. Larue v. Larue, 96 Ky., 331.

I. W. TWYMAN and W. S. PRYOR for appellees upon a petition for a rehearing

The decision of this court upon the former appeal is the law of this case and this opinion is a departure from the principles laid down in the former appeal.

JUDGE BURNAM delivered the opinion of the court.

This is the second appeal in this case. The opinion on the former appeal is reported in 96 Ky., 326 [28 S. W., 790]. After reciting the allegations of the petition, the court in that opinion say: "The only question to be determined in this case is whether or not the policies of insur-

ance passed under the deed of assignment for the benefit
of the creditors, and that necessarily depends upon the in-
tention of the assignor in taking out said policies of insur-
ance on his life, and as expressed in said deed of assign-
ment. The policies are not before us, nor copies of them.
Their terms and conditions, and the beneficiaries thereof,
are not known to us, save and except as stated in the peti-
tion and amended petition. Whether or not they were
valuable as assets would depend upon the number of pre-
miums that have been paid, the length of time they have to
run, and their cash surrender value, if any; assuming that
they had passed under the general deed of assignment,
and that the assignor was still living. Like other choses
in action, they are subjects of assignment. They are used
daily in commercial transactions as a basis of credit, often
being pledged as collateral securities for debt. They are
not such assets as may be attached during the life of the
assured, or sold under execution. We must, however, for
the purpose of the demurrer, assume the facts stated in
the petition and amended petition are true. The allega-
tion therein that these policies were payable to the as-
signor, his order, or creditors, and that he used them as a
basis of credit, stating that he had his life insured for the
benefit of his creditors, coupled with the language used
by him in the deed of assignment, indicated that he intend-
ed to pass them to his assignee for their benefit."

On the return of the case to the lower court, issue was
joined and proof taken, and upon the final hearing the
court adjudged both policies to the assignee, and from this
judgment appeal is prosecuted.

The testimony shows that on the 28th day of August,
1891, Larue made an assignment to appellee for the benefit
of his creditors, and that he furnished a very minute in-

ventory of the property covered by the assignment. Neither of the policies of insurance sued on was included in that inventory, but, following the inventory, the deed provides: "If I have omitted to name any property, accounts, or claims not herein mentioned in this deed, the same is hereby assigned and transferred to my assignee for the purpose aforesaid."

And this action by the assignee to recover the value of these policies is based upon this section of the deed of assignment.

The policy in the Equitable Life Insurance Company of New York was assigned to Barbour & Doherty on the 18th day of September, 1891, on the back of the policy, and is in these words: "Whereas, O. M. Barbour and William Doherty stand as my security for a large amount of money, and will evidently have to pay the same, and being unable in my financial condition to pay and keep up the premiums, and for value received, I hereby transfer and assign to Owen M. Barbour and William Doherty the full benefit of the within policy No. 518,711. Given under my hand this 18th day of September, 1891. L. L. Larue."

And a fuller assignment was made Barbour & Doherty on the 29th day of September, 1891.

At the time this assignment was made Barbour & Doherty were the sureties in a note for $2,500 of Larue. The policy was dated the 5th day of March, 1891, and reads as follows: "The Equitable Life Assurance Society, in consideration of the written and printed application of this policy, which is hereby made a part of this contract, and the payment in advance of $167, and of the annual payment of $167, to be made thereafter at the office of the society in the city of

New York on or before the 24th day of February in every
year during the continuance of this contract, does promise
to pay to Lewis L. Larue, his executors, administrators, or
assigns, at the office of the society in the city of New York,
$5,000, upon satisfactory proofs of the death of the said
Lewis L. Larue, of Hodgensville, in the county of Larue
and State of Kentucky."

Larue died on the 14th day of February, 1892.
It appears from the testimony of G. G. Gaddie,
the local agent who solicited this policy, that de-
cedent did not have the money to make the first payment
in full at the time the policy was issued, but that he ad-
vanced the premium for him, which was subsequently re-
paid to him, except $37, for which he took the note of La-
rue. This $37 note was paid to him by the assignees, Bar-
bour & Doherty, after the assignment of the policy to
them. Gaddie testifies that he applied to the assignee,
Srygley, and that he declined to pay it, referring him to
Barbour & Doherty as the proper persons to pay same.

The Kentucky policy was assigned to the Hayses on the
21st day of October, 1891. This policy was issued on the
21st day of February, 1891, the contract therefor being
made by one Jesse L. Talbott, as agent for the company.
The amount of the premium was $162.35, and in this case,
also, Larue did not have the money to pay the premium,
and it was advanced for him by the agent of the company,
who took the note of Larue therefor, payable to himself.
Subsequently to the assignment the Hayses paid off this
note to Talbott, and when the second premium on the poli-
cy fell due they also paid that. This policy recites "that it is
issued in consideration of the sum of $162.35, and of a like
sum to be paid at the home office in the city of Louisville
on or before the 2d day of February in every year there-

after." The policy provided that "if any premium, or part of premium, or any note given therefor, shall not be paid on or before the day on which it becomes due at the office of the company in the city of Louisville, or to an agent producing a receipt of the company signed by the president or secretary, the policy shall then become void, and insurance cease, without notice to the insured, or parties interested in this policy, or holders thereof: *Provided, however*, in case of default of the payment of the third or any subsequent annual payment, then this policy, without further negotiations or stipulations, shall be binding upon the company for such amount of non-participating paid-up insurance as specified in the table of paid-up values indorsed hereon."

This policy further recited "that it was issued and accepted upon the express conditions that the said L. L. Larue may, with the consent of the company, at any time assign it, or before assignment change the beneficiaries. therein, or make any. other change." At the date of the assignment of this policy to the Hayses, they were the securities of Larue for a sum largely in excess of the whole amount of the policy. On the 30th day of November, 1891, Larue made a will, which, subsequently to his death, was probated and admitted to record.

In the fourth clause thereof he recites: "Under the late transfer, the estate that I now hold, and am entitled to as allotted by law, I will and bequeath the same to be disposed of as follows: First, I will to my beloved wife, Emaline Larue, all of my personal property, of every character whatever, that may belong to me at the time of my death, to become absolutely hers, and to be disposed of by her as she may deem proper. Also, I will and bequeath to

her all of my right and interest in and to a homestead of
$1,000, to be disposed of as she may deem proper. I
hereby will that H. D. Larue collect my life insurance pol-
icy in the Equitable Life Insurance Company of New York,
$5,000, pay, to O. M. Barbour the amount of his lien on
said policy and to Miss Lizzie Dorsey $1,000, the amount
of her lien on the homestead property, and, after the pay-
ment of the firm debts of Larue & Son, composed of L. L.
Larue and H. D. Larue, the balance to be equally divided
between my two sons, H. D. Larue and W. L. Larue. I
hereby name and appoint my son H. D. Larue as my exec-
utor to carry out the provisions of this my last will and
testament."

On the next day thereafter he made this codicil: "I
hereby amend and add to my will, as made on the 30th day
of November, 1891, that my insurance policy in the Mutual
Insurance Company of Kentucky, dated February 2, 1891,
for the sum of $5,000, the same held by J. R. Hays and
Elijah Hays under the transfer heretofore made by me, be
collected by them, and the proceeds thereof equally divided
between them. They having paid large amounts as my se-
curities heretofore, and said policy having been heretofore
assigned and transferred to them by me, it is my will that
they have said policy for their sole use and benefit, their
heirs and assigns forever."

There is evidence in the record which conduces
to show that decedent, Larue, had been carrying
policies of insurance on his life for a number
of years before his voluntary assignment to Srygley,
and that at the time he held policies, other than those in
contest in this action, which were permitted to lapse by
non-payment of premiums. There is not a particle of evi-
dence in this record which shows that he ever contracted

any new indebtedness subsequent to the taking out of these policies, or that he had ever obtained any credit on the basis thereof.

The question to be determined on this appeal is whether either of the policies of insurance in contest in this action at the time of the assignment stood for a tangible substantial, property right, having such ascertainable value as to make them an appreciable part of the estate of decedent. It is conceded, under the terms of the policies, that they had no withdrawal cash value, which either Larue or his assignee could have realized from the companies; and it seems to us that the proof is absolutely overwhelming that neither Larue nor his assignee, Srygley, thought at the time of the assignment that they passed thereunder. This is shown by the minute inventory of the assigned property made out by Larue, which does not include the policies in contest, and by the fact that, subsequently thereto, he openly assigned these policies to appellants, and thereafter ratified by will the disposition he had made thereof, and provided for the disposition of the overplus which would belong to his estate arising from the New York policy assigned to Barbour & Doherty. He directed that a part of this surplus should be used to pay off the mortgage upon the homestead, which belonged to him as exempt property under the deed of assignment, and that the surplus, after this was done, should belong to his children.

Larue did not pay all of the first premium due on either of these policies; but, as the companies received the money, and the indebtedness for the unpaid premium was due to the agents in their individual capacity, the companies had no right to cancel either of them for the non-payment of the notes executed to their agents,

Gaddie and Talbott.  But it is true that the Kentucky policy would have lapsed if appellant Hays had not paid the second premium at the date of its maturity, and it can not be contended that the assignee, Srygley, did anything, or intended to do anything, towards keeping alive either policy.  He was not a creditor or surety of Larue, or in any way related to him.  He had no pecuniary interest whatever in Larue, and, under the deed of assignment, the only duty imposed upon him was to take charge of the assigned estate, convert it into money, and distribute it among the assignor's creditors.  There was nothing in the deed of assignment which authorized him to use the moneys of the estate to pay the premiums due upon these policies during the bankrupt's life, and to have done so might have kept the estate unsettled for an indefinite period, for the mere purpose of speculating upon the chances of the bankrupt's early death.

Until these policies of insurance had been carried to that point where, under the terms of the policies themselves, they had a value, it does not seem to us that they can be considered as representing any real property right or interest which would pass to the assignee. Even if he had been authorized by law to use the estate assigned to him to keep alive these policies, it would have been a mere chance if the creditors profited thereby, as usually such policies, instead of being an advantage and source of profit, are a burden upon him who must pay the premium.

A similar question was considered *in re* McKinney, 15 Fed. Rep., 536, decided in the United States District Court for the Southern district of New York.  In that case the court said:

"Looking at this policy as it stood at the time

of the bankruptcy, it presents two different elements: (1) Its cash surrender value at that time; (2) its character as an executory contract, whereby the bankrupt or his representative was to pay an annual premium during his life, and observe numerous other conditions specified in the contract, and the company, if all these conditions were observed, was to pay the sum of $3,000 at his death. The first of these elements, the surrender value of the policy, arises from the fact that the fixed annual premium is much in excess of the annual risk during the earlier years of the policy—an excess made necessary in order to balance the deficiency of the same premium to meet the annual risk during the latter years of the policy. This excess in the premium paid over the annual cost of insurance, with accumulations of interest, constitutes the surrender value. Though this excess of premiums paid is legally the sole property of the company, still, in practical effect, though not in law, it is moneys of the assured deposited with the company in advance to make up the deficiency in later premiums to cover the annual cost of insurance, instead of being retained by the assured and paid by him to the company in the shape of greatly increased premiums, when the risk is greatest. It is the 'net reserve' required by law to be kept by the company for the benefit of the assured, and to be maintained to the credit of the policy. So long as the policy remains in force, the company has not practically any beneficial interest in it, except as its custodian, with the obligation to maintain it unimpaired and suitably invested for the benefit of the insured. This is the practical though not the legal, relation of the company to this fund. Beyond this interest in the surrender value, I think nothing passed to the assignee in bankruptcy save the naked title to the policy in order to make the in-

terest available. As an executory contract, aside from its
surrender value, the policy had no pecuniary value what-
ever. Assuming that the bankrupt had the average expec-
tation of life, as a mere contract, for future insurance, it
would be a burden, rather than a benefit, to the estate;
for, whatever might be afterwards obtained from it (be-
yond the present surrender value), a still greater sum
must presumably be paid out, in the shape of future pre-
miums and interest, in order to keep the policy alive, since
these premiums, with interest, on the average, not only
equal the amount ultimately payable, but all of the com-
pany's expenses and profits in addition. As an executory
contract, therefore, aside from its surrender value, the
policy was not 'property' or 'effects' but an incumbrance,
which the assignee would be bound to reject, like leases
at an unfavorable rent.

"The assignee, moreover, could have no right to
use the moneys of the estate to pay the premi-
ums during the bankrupt's life, and thus keep the es-
tate unsettled for an indefinite period, for the mere pur-
pose of speculating upon the chances of the bankrupt's
early death. The speedy settlement of the estates of
bankrupts, as contemplated by law, is incompatible with
such dealings."

Bishop on Insolvent Debtors (section 175) says: "The as-
signee takes only such rights as the debtor himself had or
could assert at the time of making the assignment."

In the second volume of May on Insurance the author
says:

"The assignment of a life policy is not affected by a prior
general assignment in favor of creditors, where it appears
that the policy remained in the hands of the assignor, and

never came into the possession of, or was claimed by, the assignee for creditors."

See, also, 49 Hun., 192, 193, [1 N. Y. Supp., 854].

And in the case of Johnson v. Alexander (decided by the Supreme Court of Indiana, November 11, 1890) [9 Lawy. Rep. Ann., 660 (s. c. 25 N. E., 706)], the court said:

"An arrangement is not void, as a fraud on creditors, by which an insolvent debtor, soon after taking out insurance on his own life, payable at his death to his executors, administrators, or assigns, assigns the policy to certain of his creditors to secure the payment of their claims, taking from them an agreement to pay the premiums, and, after deducting the amount of such pay‑ ments and of their claims from the proceeds of the policy, to pay the balance to his heirs or to his order; and if no other disposition is made by him the heirs are entitled to such balance, as against other creditors of assured, at least where there is no evidence of actual fraud, or that such creditors were injured by the arrangement;" the court fur‑ ther saying: "The law favors the making of a reasonable provision by a man for his family and those who are de‑ pendent upon him, and it is not a violation of the statute, and no fraud on creditors, for a debtor though insolvent, to contribute and pay a reasonable amount for insurance for the benefit of his family."

In the case of Central National Bank v. Hume, 128 U. S., 195 [9 Sup. Ct., 41], it is held that "a man may rightfully devote a moderate portion of his earnings to insurance on his life, and thus make a reasonable provi‑ sion for his family; and, though he be insolvent, such payment is not a fraudulent transfer of his property; and that, after his decease, his creditors will have no interest in the policy."

In Appeal of McCutcheon, 99 Pa. St., 133, it is held: "When a person takes out a policy of insurance upon his own life in his own name, and subsequently assigns same to his wife, child, or other dependent relative, the mere fact that the assignor is insolvent at the time of making the assignment does not warrant the inference that the assignment was a fraud on creditors."

2 Bigelow, Frauds, p. 129 says: "A debtor, though insolvent may use his earnings to pay for insurance on his life in favor of his family."

At the date of the general assignment by Larue these policies had no appreciable pecuniary value. They represented no sum for which collection could have been enforced from the insurance companies, either by Larue or his assignee. They became valuable thereafter only by reason of the failure in the health of assured. He had paid nothing on the Kentucky policy with which his estate was chargeable and an apparently small sum upon that assigned to Barbour & Doherty; and under the assignment this policy, after providing for the payment of the debt on which Barbour & Doherty were sureties, under the will of Larue the balance goes to discharge the mortgage debt upon his homestead and to his children.

It has been the policy of this State for many years to encourage the making of reasonable provision by men for their families, and for others interested in the preservation of their lives, by the taking out of life insurance for their benefit. As early as 1870 the Legislature enacted section 655 Kentucky Statutes, which provides:

"When a policy of insurance is effected by any person on his own life, or on another life in favor of some person other than himself, having an insurable in-

terest therein, the lawful beneficiary thereof, other than himself or his legal representatives, shall be entitled to its proceeds against the creditors and representatives of the person effecting the same: provided, that, subject to the statute of limitations, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy."

Thus, clearly authorizing any person to take out a policy on his own life for the benefit of another having an insurable interest therein, and securing the proceeds thereof to such beneficiary; provided, however, that any premiums paid in fraud of creditors to maintain such policy should inure to their benefit from the proceeds of the policy.

There is no contention here that the premiums paid on either of the policies in controversy were paid in fraud of the rights of creditors, and it would appear that there can be no valid reason why a person could not assign or transfer policies of insurance already taken out payable to his estate, which had no pecuniary value, to any other person having an insurable interest in his life. In our opinion, these policies of insurance had no withdrawal or pecuniary value at the date of the assignment, and did not pass thereunder. Barbour & Doherty acquired no interest in the policy assigned to them beyond the debt which it was transferred to secure, as beyond this they had no insurable interest in the life of the assured.

For reasons indicated, the judgment is reversed, and the cause remanded for proceedings consistent with this opinion.

THE WHOLE COURT, EXCEPT JUDGE HOBSON, CONSIDERED THIS CASE.