Case 18—ACTION BETWEEN GEORGE W. BRAMBLETT AND THOMAS F. HARGIS' EXECUTRIX INVOLVING THE OWNERSHIP OF A POLICY ON THE LIFE OF THOMAS F. HARGIS.—JUNE 7.

## Bramblett v. Hargis Ex'r'x.

Appeal from Jefferson Circuit Court, (Chancery Branch, 2d Dvision.)

SAMUEL B. KIRBY, Judge.

From the judgment Bramblett appeals. Affirmed.

1. Life Insurance—Assignment of Policy—Validity—The assignment of a policy of life insurance to a party not having an insurable interest in the life of the insured is against public policy and void as between the parties.

2. Same—Insurable Interest of Assignee—Creditors of Insured— To make the sale or assignment of a policy of life insurance valid as between the parties, the assignee or purchaser must be related to the insured in such a degree as would authorize him to take out insurance on the life of the insured or he must be a creditor and if a creditor he can only participate in the proceeds of the policy to the extent of the indebtedness the policy was sold or assigned to secure.

3. Same—Pledge of Policy—Confined to Debt Specified—A policy of life insurance or other property pledged to secure a particular debt can not be held by the pledgee to cover other debts due him by the pledgor.

HELM, BRUCE & HELM for appellant.

## CONCLUSION.

We submit in conclusion the following propositions:

1. The general assignments from the banks to Bramblett, in which Hargis himself united, covered this insurance policy and passed the right thereto to Bramblett.

2. Inasmuch as this was a fully paid-up policy, about which there were no conditions, being thus simply an absolute promise to pay a specific sum of money on the death of Judge Hargis, it was legally assignable without regard to insurable interests on the part of the assignee in the life of the assignor.

3. But if the insurable interest was necessary, then it did exist in this case because Bramblett was a creditor of Judge Hargis at that time and until the death of the latter.

4. If a policy passed under this assignment, and if an insurable interest was necessary to uphold the validity of the assignment, yet as the assignment was not by way of mere pledge, but was absolute, Mr. Bramblett's recovery is not limited to the amount of the debt; but, inasmuch as there was no such disproportion between the policy and the debt as to show it to be a mere wagering transaction, the assignee is entitled to recover the full amount of the policy.

5. If the court should hold that this policy did not pass under that general assignment in which Hargis united, yet inasmuch as Bramblett holds the legal title to the policy on the face of the papers, it having been regularly assigned by Hargis to the bank and by the bank to Bramblett, and as the representative of Hargis is now in a court of equity in effect demanding the surrender of the policy or its proceeds, and as that estate is undoubtedly a debtor to Bramblett on account of the old surety debt, the court should under these circumstances, even if the policy did

Bramblett v. Hargis Ex'r'x.

not pass under the general assignment, require the Hargis estate to pay this surety debt to Bramblett before being allowed to withdraw, that policy or its proceeds out of the court.

### AUTHORITIES CITED.

Amick v. Butler, 111 Ind. 557 Ulrich v. Reinohl, 143 Pa. St. 253 &c.; McHale v. McDonnell, 175 Pa. St. 632; Leaf v. Leaf, 92 Ky. 166.

RICHARDS & RONALD for appellee.

### POINTS AND AUTHORITIES.

We beg to submit in conclusion:

(1) That the chancellor has found as a question of fact that the policy in question did not pass under the assignment from the Kentucky National Bank, and this finding, not being in contravention to the evidence, will not be disturbed by this court

(2) That the title of the bank to the policy in question was that of pledgee only, and the debt for which it was pledged having been satisfied, it could not sell or dispose of same

(3) That an insurable interest was necessary to support the assignment of the policy to Bramblett.

(4) That the demurrer and motion to strike out the amended pleading of Bramblett was properly sustained.

We believe the court will find no error in the record presented and ask that the judgment be affirmed.

### AUTHORITIES.

Basye v. Adams, 81 Ky., 368; Lee v. Mutual Life Ins. Co. of N. Y., 26 Ky. L. Rep., 577; Barbour's Admr. v. LaRue, 106, Ky., 552; New York Life Ins. Co. v. Brown's Admr., 23 Ky. L. Rep., 2070; Caudell v. Woodward, 96 Ky., 646; Beard v. Sharp, 100 Ky., 606.

OPINION BY JOHN D. CARROLL, COMMISSIONER.— Affirming.

This suit involves $4,500, the proceeds of a paid-up policy for $15,000 issued to Thomas F. Hargis by the New York Life Insurance Company, and a brief history of the facts is necessary to an understanding of the issues involved. In 1892 Thomas F.

Hargis executed a note for the sum of $22,000 to the Kentucky National Bank, and as security for this note pledged as collateral certain shares of stock in the Commonwealth Land & Lumber Company, two real estate notes of that company, and a policy of insurance upon his life for $15,000. The bank instituted suit and recovered a judgment on the two notes against the land and lumber company, and also brought suit against Judge Hargis on his note for $22,000. While this suit was pending, the appellant, Bramblett, the bank and Hargis entered into a written contract, the material parts of which are as follows: "For and in consideration of $10,000, cash in hand paid, and considerations hereinafter mentioned, the Kentucky National Bank, and the Mechanics' Trust Company, assignee, hereby respectively assign, transfer, and deliver to George W. Bramblett, without recourse on either of them, all their respective rights, title and interest in and to all their claim or claims against Thomas F. Hargis, the Commonwealth Land & Lumber Company, and the North Cumberland Manufacturing Company, now in suit in the Jefferson Circuit court, or otherwise; and, as a further consideration for the transfer, any claim of Thomas F. Hargis in said suit against the Kentucky National Bank must be dismissed by him settled, and said bank will also dismiss its suit against the said Hargis on the note sued on therein settled. But it is expressly agreed by the said Thomas F. Hargis that the said Bramblett may continue to prosecute the suits for a collection and enforcement of the judgment against the Commonwealth Land & Lumber Company, and that the settlement of said suit shall not interfere with the right or title to said judgments, it being intended by the dismisal of the suit against Hargis to merely release him from any liability from any personal judgment, but not to release the collateral." The effect of this contract

was that Hargis was released from all liability on his note for $22,000, and that Bramblett, in consideration of the $10,000 paid by him, became the owner of the judgments against the land and lumber company, and as he contends the owner of the life insurance policy for $15,000, which had previous to that time been converted into a paid-up policy for $4,500. This the appellee as widow and executrix of Thomas F. Hargis, denies, and the chancellor by whom the case was heard decided in her favor. The insurance policy is not mentioned in the contract, although it was pledged in connection with the stock and notes of the land and lumber company as collateral to secure the payment of the Hargis note. It is in evidence that this policy was in the possession of the bank at the time this contract was entered into as a part of the collateral pledged to the bank by Hargis to secure his note, and that it was delivered by the bank to Bramblett, and that there was no other consideration than the contract for the delivery to him of the policy. This policy and the shares of stock in the land and lumber company were delivered to Bramblett by the bank on January 23, 1901, and on the 20th day of February, following, the policy was assigned by the bank to Bramblett with the consent of the company. Bramblett retained possession of the policy obtained by him from the bank until after the death of Judge Hargis, in 1903. The president of the bank testified that at the time the contract was written he overlooked the fact that the life policy had been pledged by Hargis to the bank, but it was the purpose of the bank to transfer to Bramblett all the collateral pledged to secure the payment of the note. The attorneys who wrote the contract say that the insurance policy was not mentioned in any of the conferences leading up to the contract, nor was Judge Hargis present at any of them; all the negotiations being between the bank, its attorneys, and Bramb-

lett, except that the contract was signed by Hargis. We do not, however, deem it necessary to further consider the question whether or not the insurance policy passed to Bramblett under the contract, as in no event is he entitled to the proceeds of it. Bramblett had no insurable interest in the life of Hargis. The policy was not transferred to him because he was a creditor, nor was he related to Hargis in any degree of kinship, or at least not in such degree as to give him an insurable interest in his life. Hargis had been released from all obligations to the bank, his indebtedness to it was satisfied by the assignment of the collateral to Bramblett, and the payment by Bramblett in consideration therefor of $10,000, nor did Bramblett have any claim against Hargis growing out of any of the transactions referred to in or connected with the contract.

There is irreconcilable conflict in the courts of last resort as to the validity of the assignments of policies of insurance to persons who have no insurable interest in the life of the insured, but it is the settled law of this State, as announced in repeated decisions of this court, that the sale or assignment of a policy of insurance to a person who has no insurable interest in the life of the insured is void as between the parties. This rule of public policy was first declared in Bayse v. Adams, 81 Ky. 368, 5 Ky. L. R. 91 in which the court, citing with approval Warnock v. Davis, 104 U. S. 775, 26 L. Ed. 924, said: "In all cases there must be a reasonable ground founded upon the relations of the parties to each other either pecuniary or of blood or affinity, to accept some benefit or advantage from the continuance of the life of the assured, otherwise the contract is a mere wager by which the party taking the policy is directly interested in the early death of the assured. Such policies have a tendency to create a desire for the event. They are therefore, independent of any statute on

the subject, condemned as being against public policy. The assignment of a policy to a party not having an insurable interest is as objectionable as the taking out of a policy in his name. We are unable to see why the rule recognized by all the authorities as applicable to, and which renders invalid because against public policy, policies of life insurance taken for the benefit of the party having no insurable interest in the life of the person in whose name it is issued, should not be also invalid as to an assignment of the policy where the assignee has no such insurable interest." And it has been followed in a number of cases: Beard v. Sharp, 100 Ky. 606 Ky. 18 Ky. L. R. 1029; 38 S. W. 1057; Barbour's Adm'r, v. Larue's Assignee, 106 Ky. 546; 21 Ky. L. R. 94; 51 S. W. 5; N. Y. Life Ins. Co. v. Brown's Adm'r, 66 S. W. 613, 23 Ky. Law Rep. 2070; Baldwin v. Haydon, 70 S. W. 300, 24 Ky. Law Rep. 900; Wrather v. Stacy, 82 S. W. 420, 26 Ky. Law Rep. 683; Lee v. Mutual L. Ins. Co., 82 S. W. 258, 26 Ky. Law Rep. 577; Schlamp v. Berner's Adm'r, 51 S. W. 312, 21 Ky. Law Rep. 324; Embry's Admr's, v. Harris, 52 S. W. 958, 21 Ky. Law Rep. 714. The rule' so established may be thus stated: To make the sale or assignment of a policy valid as between the parties, the assignee or purchaser must be related to the insured in such a degree as would authorize him to take out insurance on the life of the assignor or vendor, or he must be a creditor, and if a creditor he can only participate in the proceeds of the policy to the extent of the indebtedness the policy was sold or. assigned to secure.

Counsel for appellant, in an able an exhaustive brief, presents the argument that this rule should not be held to embrace paid-up policies of insurance, and presses on the court that there is a marked distinction between the sale or assignment of that class of policies where the annual or other premium must

be paid by the assignee, and policies that are fully paid up, and insists that the reasons forbidding the sale or assignment of the former can have no application to the latter, as a paid-up policy is in effect a gift of a specified sum payable upon the death of the assignor, and conveyances or devises, in substance the same as this, are upheld by all the courts without question. But life insurance occupies a distinct and peculiar field in the business world, and this court has committed itself to the doctrine that the rules of law governing the ordinary transactions of the commercial interests of the community in reference to the sale and assignment of chattels, choses in actions, and other property, do not apply to policies of life insurance, and we are unable to perceive any substantial or well-founded difference, so far as this rule of public policy is concerned, between a paid-up policy of insurance and one upon which annual or other premiums must be paid. The reasons that forbid the sale or assignment of the one apply with equal force to the other, as at last the question is not so much the payment of the premiums but the fact that the reception of the amount due upon the policy depends upon the death of the insured, thus creating a desire that the life upon the termination of which the payment of the money depends shall be ended as speedily as possible.

It is further urged that Bramblett was a creditor of Hargis at the time the policy was assigned, and therefore, did have an insurable interest in his life, and, for the purpose of tendering this issue, Bramblett, during the progress of the case, offered an amended pleading, in which he alleged that at the time of the assignment of the policy Hargis was indebted to him in a large sum growing out of a debt that Bramblett had paid for him as his surety on a replevin bond, and that to the extent of this payment he was a creditor of Hargis, and therefore had an insurable

Bramblett v. Hargis Ex'r'x.

interest in his life that entitled him to the proceeds of this policy to the extent at least that it might be necessary to pay this debt. There would be great force in this contention, except for the fact that Bramblett rests altogether his right to this policy on the ground that it passed to him under the contract before mentioned, and it is not pretended that the indebtedness of Hargis on account of the payment of the replevin bond entered into or had anything to do with this contract. As the chancellor very correctly said: "Bramblett stakes his case upon the contract of assignment of December 13, 1900, and upon this he must stand or fall, and I do not know of any rule of common law or principle of equity by which Bramblett can claim a lien for that debt upon this policy." A policy of life insurance or other property pledged to secure a particular debt cannot be held by the pledgee to cover other debts due him. Masonic Savings Bank v. Bangs' Adm'r. 84 Ky. 135, 8 Ky. L. R. 16; 4 Am. St. Rep. 167; Reinhardt v. Marks' Adm'r, 93. S. W. 32, 29 Ky. Law Rep. 388.

The judgment of the lower court must be affirmed.