CASE 7—ACTION BY ASSIGNEE FOR SETTLEMENT OF THE ASSIGNED ES-
TATE—MAY 29.

# Planters' State Bank v. Willingham's Assignee.

APPEAL FROM HENDERSON CIRCUIT COURT.

JUDGMENT FOR ASSIGNEE AND PLANTERS' STATE BANK APPEALS. RE-
VERSED.

ASSIGNMENT FOR CREDITORS—PREFERENCE BY INSOLVENT DEBTOR—AS-
SIGNMENT OF INSURANCE POLICY HAVING TANGIBLE VALUE.

Held: 1. A policy of insurance under which insured by the pay-
ment of premiums had earned the right to a paid-up policy for
a certain proportion of the insurance had a tangible value, so,
that its assignment by insured to a creditor in contemplation
of insolvency, and with the design to prefer the assignee to
the exclusion of other creditors, operated as a general assign-
ment for the benefit of creditors under the statute; the assign-
ment of the policy stipulating that in the event insured should
cease to pay premiums the assignee should have the right to
surrender the policy and receive its cash value, which amount-
ed    to    an    exercise    by    the    insured    of    the    privil-
ege of surrendering the policy and accepting its surrender value,.
even if that privilege was a personal one.

2. Such an assignment made by an insolvent debtor thirty days be-
fore the execution by him of a deed of general assignment for
the benefit of creditors was manifestly in contemplation of in-
solvency, and with the design to prefer the assignee.

3. Payments of premiums made by the assignee, with interest there-
on, should be refunded to him out of the proceeds of the policy
which he surrendered in consideration of a cash payment made
to him by the company by way of compromise, and there should
then be a *pro rata* distribution of the balance of the proceeds
among all the creditors.

MONTGOMERY MERRITT, ATTORNEY FOR APPELLANT.

The question to be decided in this case is: Can life insurance
policies be attached? Do they pass to the assignee under a
deed of assignment?

Did these insurance policies have a surrender value in paid-
up insurance or in cash; and if so, were they subject to the
payment of Willingham's debts?

We contend that the Henderson Trust Company, being the assignee of Willingham, under the deed of general assignment, will not be permitted to hold said policies under its private assignment to the prejudice of other creditors, even without the agreement with them.

The facts are, that on June 2, 1897, Geo. M. Willingham made a deed of general assignment to the Henderson Trust Company, which subsequently consolidated with, and was absorbed by, the Ohio Valley Banking and Trust Company.

On May 3, 1897, when he was hopelessly insolvent, Willingham, to secure the Henderson Trust Company, in prior indebtedness, assigned to it the notes and insurance policies involved in this case.

When the appellant and other creditors of Willingham learned of this private assignment, they exacted of it an agreement to hold same as assignee and not plead limitation if suit should not be brought within six months. Subsequently, they filed the agreement and asked for a rule against the appellee to show cause why it should not hold and distribute the proceeds of said insurance policies as other assets of the estate of said Willingham. The appellee filed response to the rule, stating that it surrendered said policies for $2,000 each, for $942.59 in cash, but had paid out in premiums $180.95, leaving in its hands $771.64, but claimed that said policies had no surrender or cash value, and were in no manner subject to the payment of said Willingham's debts.

The court adjudged the response sufficient and discharged the rule, and hence this appeal.

Massey v. Gaston, 90 A. D., 294; 3 A. & E. E. L. (2d ed.), 39 and notes; 86 Ky., 602; 13 A. & E. E. L. (1st ed.), 647; Tradesman Nat. Bank v. Cresson, 10 Pa. Co. Ct., referred to in 14 A. & E. E. L. (2d ed.), page 760 and notes; Barbour's Admr. v. LaRue's Assignee, 57 S. W. R., 6; Civil Code, 439.

YEAMAN & YEAMAN, FOR APPELLEE.

The response to the rule against appellee in this case says: That the policies were assigned as collateral security for a debt of $6,140.82, owing by Willingham to appellee, Henderson Trust Company; that the policies were payable only at the death of Willingham to his administrator or executor or assigns; that by their terms they required the payment of an annual premium during his life, and neither of them contained any obligation upon the part of the insurance company to pay any sum whatever, in any event, until after the death of Willingham;

that they had no surrender cash value whatever; that, the Henderson Trust Company kept alive the two policies by paying the premiums thereon, and afterwards the Henderson Trust Company and appellee consolidated as provided by statute and formed a new corporation being the appellee; that on July 27, 1898, appellee compromised with the insurance company and surrendered to it the policies in question upon the payment of $942.59, which, after deducting premiums it had paid, left the net sum of $771.64. The response then submits that the policies were in no manner subject to the payment of Willingham's debts; that his creditors could not, by any process, have subjected them to the payment of his debts, and that more than $3,000 of its debt remains unpaid.

The response was adjudged sufficient, and that the policies passed to the trust company by Willingham's assignment of them to said company as collateral. From that judgment this appeal is prosecuted.

### AUTHORITIES CITED.

Brewer & Orr v. Cosby, 8 Bush, 389; Bond v. Hurley, 78 Ky., 260; Ting v. Eifort, 80 Ky., 152; Lisby, &c., v. Perry, &c., 6 Bush, 515; Fuqua v. Ferrell, 80 Ky., 71; Blincoe v. Lee, &c., 12 Bush, 358; Jackson, &c., v. Anderson, &c., 4 S. W., 326; sec. 70 Bankrupt Act of 1898; LaRue's Assignee v. LaRue's Admr., 96 Ky., 326 (28 S. W., 720); Barbour's Admr. v. LaRue's Admr., 51 S. W., 5 (21 Ky. Law Rep., 94).

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

George M. Willingham was indebted to the Henderson Trust Company (which subsequently became merged in and assumed the name of appellee, Ohio Valley Banking & Trust Company), in the sum of $6,140.82. He then held three policies of life insurance, payable to himself or his estate, for $2,000 each, on all of which he had made several annual payments. To secure the $6,140.82 above named, he executed to his creditors this assignment: "Whereas, I, Geo. M. Willingham, of Henderson county, Kentucky, am justly indebted to the Henderson Trust Co., either as principal, indorser, assignor, or guarantor, in the aggregate sum of about sixty-one hundred and forty dollars

and eighty-two cents, a list or schedule of which indebtedness typewritten and indorsed by me, with my name for identification, is attached herein and made a part hereof: Now, as collateral security for the payment of said indebtedness, I hereby assign, transfer, and deliver to said Henderson Trust Co. the following policies of insurance upon my life, namely: Policy No. 129790, issued by the Mutual Benefit Life Insurance Company, dated May 24, 1886, for the sum of $2,000.00, payable to myself, my executors, administrators, or assigns; and also policy No. 135798, issued by the Mutual Benefit life Insurance Co., dated May 4, 1887, for the sum of $2,000.00, and payable to myself, my executors, administrators, or assigns; and also policy No. 193391, issued by the Hartford Life & Annuity Insurance Co., May 6, 1895, for the sum of $2,000.00, and payable to my legal representatives. A separate assignment of this date is made upon each policy, and said policies are delivered to, and left in the possession of, said Henderson Trust Co. This assignment and agreement is in no wise whatever to affect my liability upon any of the paper evidencing said indebtedness, nor the Henderson Trust Co.'s right to take any steps for the collection of said indebtedness, or any part thereof. The said policies are to be held by said Henderson Trust Co. as collateral for the final payment of the whole of said indebtedness, including any note or other obligation that may be given in renewal thereof, or of any part thereof. But six per cent. interest only is to be computed in estimating the amount for which said policies are held as collateral. I am to keep the premium paid on all of said policies, and my failing to do so is to be regarded as my abandonment of them, in which case the Henderson Trust Co. may at its option, elect either to pay such premiums, or to surrender

said policies and receive their cash value, and apply the same to said indebtedness. But in no event is said Trust Co. to retain of the proceeds of said policies more than the amount then due on said indebtedness to it, including six per cent. interest. Any balance of said proceeds is to be paid to my representatives. If said indebtedness is otherwise paid while said policies are in force, they are to be returned to me. Any sum the said Trust Co. may pay out for premiums in said policies, or any of them, is to be added to said indebtedness, with 6 per cent. interest thereon. Witness my signature this May 3, 1897. [Signed] G. M. Willingham. Witness: Malcolm Yeaman." This assignment was executed May 3, 1897. On June 2d, thereafter, Willingham made a general deed of assignment to the same trust company for the benefit of all his creditors, he being insolvent and unable to pay all his indebtedness in full. In the suit by the assignee to settle the trust estate, certain creditors of Willingham, who are appellants here, entered a motion to require the assignee to account for the value of the insurance policies named above; it being averred that the assignment of the policies to it on May 3, 1897, was while the debtor was insolvent, and made by him in contemplation of his insolvency, and with the design to prefer the trust company. It was sought by this proceeding to bring the proceeds of these insurance policies into the assigned estate for the benefit of all creditors under the deed of June 2d. Appellee trust company responded to the rule, averring that it was the creditor of the assignee as stated, and that it had, since the assignment of the policies to it, in order to keep two of them alive, paid the premiums thereon, amounting to $180.55; that the policies were payable only at the death of the assured, who was alive; and that on July 27, 1897, it had

"compromised with the Mutual Benefit Life Insurance Company, and surrendered to it the two first named' policies upon the payment to respondent of the sum of $942.50." The response was held sufficient and the rule discharged, the judgment decreeing that appellee was not required to account to the other creditors for any part of the $942.50 named.     From that judgment the creditors prosecute this appeal.

The two policies each provided for a surrender value in paid-up insurance after two full annual premiums had been paid, and the insured then failed to pay further premiums. But there was no provision for a cash surrender value. However, after these policies were issued the insurance company issued general circulars, applicable to them as of a class, containing the following: "Nonforfeiture Provisions Indorsed on Policies. When, after two full annual premiums shall have been paid on this policy, it shall cease or become void solely by the non-payment of any premium when due, its entire net reserve by the American Experience Mortality, and interest at four per cent. yearly (provided there be no loan on the policy), shall be applied by the company as a single premium, at the company's rates published and in force at this date, either—First, to the purchase of nonparticipating term insurance for the full amount insured by this policy; or, second, upon the written application by the owner of this policy, and the surrender thereof to the company at Newark within three months from such nonpayment of premium, to the purchase of a nonparticipating paid-up policy, payable at the time this policy would be payable if continued in force. Both kinds of insurance aforesaid will be subject to the same conditions, except as to payment of premiums, as those of this policy. Third, if preferred, the company will, on surrender of the policy,

fully receipted, within the said three months, pay, as a cash surrender value, its entire net reserve by the American Experience Mortality, and interest at four and one-half per cent. yearly, less a surrender charge equal to one per cent. of the sum insured by the policy. If there be any loan on the policy, such indebtedness shall be paid off out of the cash surrender value, and the remainder paid in cash by the company, or a value will be allowed by the company in the form of extended or paid-up insurance as above provided; the amount to be applied to the purchase of such insurance being correspondingly reduced in the ratio of the indebtedness to the full cash surrender value." It is earnestly argued for the appellee that, when the policies in question were assigned to it, their value was inchoate, indefinable, and problematical; that the insured could not have compelled their surrender, and payment of any cash value in return; and that therefore they were not that class of property that would pass under a deed of assignment generally for the benefit of creditors. Appellant further argues that the policies were not subject to attachment or subjection by action, because the insurance company then owed insured nothing, and, unless certain conditions were complied with by him thereafter, such as future and prompt annual payments of premiums, and perhaps certain disposition of his person in matters of employment and travel, it would never owe him anything on the policies. We are not now called upon to decide the questions raised by that argument, because here the insurer and the insured have reduced their contract to a liquidated state, free from the nice complications suggested by brief of appellee. The insured, by the written assignment given his favored creditor on May 3d, gave it the right to surrender the policies and take cash

therefor.  He thereby exercised the privilege now claimed for him as a personal one.  When Willingham transfered the policy to appellee, it had "an appreciable value" in money, for he had the right to demand at least a "paid-up policy" for a given proportion of each of the two policies. Such a policy would have been the equivalent of the insurer's bond to pay a sum definite at a time certain or upon the happening of an inevitable contingency.  It can not be said that such an obligation is without specific money value.  It may be stated generally that any tangible, definable interest in property having a value, and not exempt by law, is subject to the owner's debts.  A contract between the debtor and an insurance company whereby the former procures for himself a policy of the investment species, which will result in the accumulation for himself either a sum certain to be paid in the future, or a provision for an annuity to be paid beginning at a period in future, creates such an interest as that, when it has come to have an ascertainable or tangible value, it will be liable for his debts.  Otherwise, it were possible for debtors so disposed to lay by, out of the means surely subject to their creditor's demands, a fund or an annuity insuring their opulence despite their unpaid obligations. The case of Barbour's Adm'r v. Larue's Assignee 21 Ky. L. R., 94 (51 S. W., 5), while discussing various phases of life insurance policies, decided only that, when enough payments had not been made upon the insurance to give the policy a pecuniary or withdrawal value, it had no such appreciable value that it would pass by a deed of assignment to creditors.  This we followed in the Morehead Case, 109 Ky., 51 (20 R., 580) (58 S. W., 473). The transfer of this asset, thirty days before general assignment, to secure antecedent debts owing appellee, was manifestly in contem-

plation of the assignor's insolvency, and with the design to prefer that creditor; and under our statute the title to this asset passed under the general deed subsequently made to the trustee for the benefit of all creditors. (Section 84, Ky. St.) Of course, the payments of premiums made by appellee, together with interest, should be first repaid to it out of the fund realized out of the policies, and then appellee's debts should share equally with other creditors in the pro rata distribution of the fund. The judgment below is reversed, and the cause remanded for proceedings consistent with this opinion.