## In re MERTENS et al.

(Circuit Court of Appeals, Second Circuit.  November 28, 1905.)

### No. 1,430.

1. BANKRUPTCY—ORDERS IN PROCEEDINGS—MODE OF REVIEW.

An order of a District Court in bankruptcy requiring a bankrupt to assign and turn over to his trustee certain life insurance policies as property of his estate is a mere step in the bankruptcy proceedings proper, and not appealable, but reviewable only on petition for revision in matter of law under Bankr. Act July 1, 1898, c. 541, § 24b, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432].

[Ed. Note.—Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. SAME—PROPERTY PASSING TO TRUSTEE—LIFE INSURANCE POLICIES.

Where a bankrupt is the holder of life insurance policies, which, although containing no provision for a cash payment in their surrender, possess an actual cash value, which, according to the uniform practice of the company, will be paid on their surrender, the bankrupt will be permitted to retain the same under Bankr. Act July 1, 1898, c. 541, § 70a (5), 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451], on payment to his trustee of such actual value.

Appeal from the District Court of the United States for the Northern District of New York.

This cause comes here upon petition to review an order of the District Court, Northern District of New York, confirming a report of a special master, overruling exceptions to the same, and adjudging that certain policies of insurance upon the life of Jacob M. Mertens (one of the members of the bankrupt firm of "J. M. Mertens & Co."), and all the rights, title, and interest of said Mertens in and to said policies, and the rights, powers. and property represented thereby, have passed to, and are the property of, the trustee in bankruptcy, and now are and remain in him.  The order directed Mertens, upon demand, to execute and deliver all assignments, releases, and other papers necessary to constitute proper vouchers in protection of the insurance company, etc.  Besides the petition to review, under section 24b, of the act (Act July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432]), an appeal was taken, upon the theory that the controversy here presented is one "arising in bankruptcy proceedings," and within the provisions of section 24a.  The opinion of the District Judge is reported in 131 Fed. 972.

D. R. Cobb, for petitioner.
W. B. Crowley, for respondent.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

PER CURIAM.  In conformity with the views expressed by the Supreme Court in First Nat. Bank v. Chicago Title & Trust Co., 198 U. S. 288, 25 Sup. Ct. 693, 49 L. Ed. 1051, the appeal must be dismissed, since the order sought to be reviewed was a mere step in bankruptcy proceedings proper, and no controversy arising out of the settlement of the bankrupt's estate of the sort presented in Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986, was disposed of by the action of the court below.  The jurisdiction of this court is confined, in cases like the present, to revision in matter of law on due notice and petition under section 24b, Act July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432].

Section 70 of the Bankruptcy Act (30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]) provides as follows:

"(a) The trustee of the estate of a bankrupt upon his appointment and qualification, and his successor or successors, if he should have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt, excepting so far as it is to property exempt, to all * * * (3) powers which he might have exercised for his own benefit; * * * (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him: Provided that when any bankrupt shall have any insurance policy which has a cash surrender value, payable to himself, his estate or personal representatives, he may within thirty days after the cash surrender value has been ascertained and stated to the trusteee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own and carry said policy, free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets."

At the time Mertens was adjudged a bankrupt, he held three tontine policies in the Equitable Life Assurance Society. By each his life was insured for a certain sum payable to the insured, his executors, administrators, and assigns, within 60 days after proof of death, and each policy provided that at the expiration of 20 years from its date the insured, if living, shall have the choice of exercising one of several options; and in each case one of these options is the cancellation of the policy in consideration of a sum of money, which includes not only a fixed sum but also a part of the earnings of the policy, which earnings are not ascertainable until the end of the tontine period. The policies did not give him the right to a cash surrender value at his option, in advance of the expiration of the tontine period, but did provide that within six months after the policy shall be in default for nonpayment of a premium, upon application accompanied by the surrender of the policy, another and a paid-up policy shall be issued upon the purchase power of the amount of the reserve alone, accumulated at the time of the default, against the strictly insurance feature of the policy. Evidence was given before the special master, who reports that it appears therefrom that upon surrender of such tontine policy, it has been the practice of the insurance company to pay upon the request of the assured a sum in each case equal to the then cash value of the paid-up policy. The interest of the insured in the policies would pass under the provisions of section 70a; for it is property which, prior to the filing of the petition, he could have transferred—indeed, he had already transferred each of them as collateral to loans, which he had obtained from a bank. The only question is whether the policies are within the proviso, so that the bankrupt may, upon paying or securing to the trustee the cash surrender value, continue to hold, own, and carry such policy free from the claims of his creditors.

It will not be necessary to review the numerous and somewhat conflicting decisions which are marshaled on the briefs. The Circuit Court of Appeals for the Seventh Circuit had the same question be-

fore it on policies identical in their provisions, and on evidence showing that there was an actual specific sum of money which the insurer was willing to pay in cash for a surrender. That court held that:

"This policy does not fall within the proviso. The term 'cash surrender value,' therein employed, has a definite and legal meaning, namely, the cash value—ascertainable by known rules—of a contract of insurance abandoned and given up for cancellation to the insurer by the owner, having contract right to do so. The proviso does not include those policies where the right to surrender is not given by the contract. In the present case, failing provision in the policy to that end, surrender could only be accomplished through agreement with the company." In re Welling, 113 Fed. 189, 51 C. C. A. 151.

We should be inclined to concur with these views, and to sustain the conclusion of the District Judge in the cause at bar that "no policy is understood to have a cash surrender value unless provided for in the policy so as to be enforceable by the insured," were it not for a subsequent expression of opinion by the Supreme Court. This is found in Holden v. Stratton, 198 U. S. 214; 25 Sup. Ct. 660, 49 L. Ed. 1018, as follows:

"There has been some contrariety of opinion expressed by the lower federal courts as to the exact meaning of the words 'cash surrender value' as employed in the proviso, some courts holding that it means a surrender value expressly stipulated by the contract of insurance to be paid, and other courts holding that the words embrace policies, even though a stipulation in respect to surrender value is not contained therein, where the policy possesses a cash value which would be recognized and paid by the insurer on the surrender of the policy. It is to be observed that this latter construction harmonizes with the practice under the bankrupt act of 1867 [In re Newland, 6 Ben. 342, Fed. Cas. No. 10,170; In re McKinney (D. C.) 15 Fed. 535], and tends to elucidate and carry out the purpose contemplated by the proviso as we have construed it. However, whatever influence that construction may have, as the question is not necessarily here involved, we do not expressly decide it."

Although this is manifestly obiter to the questions decided in Holden v. Stratton, it is such an explicit declaration of the views of the court upon the question raised here that we should hesitate to disregard it, and therefore have concluded to reverse the order under review, and remand the cause, with instructions to give the bankrupt an opportunity to pay and secure the actual value, which would be paid on surrender according to the uniform practice of the company. By such a disposition of the cause the decisions in the two circuits will not be uniform, and, although there is no appeal, our action upon petition to review may be reviewed on certiorari.

Order reversed, and cause remanded, with instructions as above.