CASE 25.—ACTION BY R. P. TOWNSEND'S ASSIGNEE AGAINST R. P. TOWNSEND' AND OTHERS ON A POLICY OF LIFE INSURANCE.—November 19.

## Townsend's Assignee v. Townsend, &c.

Appeal from Logan Circuit Court.

GEO. S. HARDY, Special Judge.

From the judgment plaintiff appeals—Affirmed.

1. Insurance—Life Policy—Vested Interest of Beneficiaries.—The interest of the children of insured in a life policy payable to them, or if they die before him then to his legal representatives, with no reservation in the policy of the right to change the beneficiary, but merely a reservation to insured of the right to surrender the policy at the end of the first ten years, or at the end of any subsequent five years, and to receive in cash its then cash value, such right continuing for only 30 days immediately succeeding any such term of years, is a vested interest, subject to be defeated only if they die before insured, or if he, at the time and. in the manner expressed in the policy, exercise his power to surrender it for its then cash value.

2. Same—Power to Surrender—Delegation of Power.—Insured in a life policy must exercise in person the power therein reserved to surrender the policy at the end of ten years, or at the end of any subsequent five years and receive its then surrender value, and can not delegate to another such power, as against the beneficiaries, notwithstanding the beneficiaries had nothing to do with bringing the contract of insurance into existence.

3. Assignments for Benefit of Creditors—Right to Life Insurance.—Even if the insured could delegate to another authority to exercise the power in a life policy to surrender the policy and receive its surrender value, the assignee for creditors of insured would have no right to the insurance as against the beneficiaries, because of insured having given a

Townsend's Assignee v. Townsend, &c.

power of attorney to so surrender it; it not having been exercised.

4.  Same.—The right of the assignee for creditors of insured in a life policy, as against his children, named as beneficiaries, is no greater, under Ky. Stats., 1903, section 655, providing that when a life policy is in favor of another than insured, having an insurable interest in his life, the beneficiary shall be entitled to its proceeds against the creditors of insured, because of the estate of insured being named as beneficiary in case his children did not survive him, and a power being reserved to him to surrender the policy and receive its surrender value; the children being alive, and he not having exercised the power.

Judges Hobson, Lassing and Barker dissenting.

S. R. CREWDSON, Attorney for appellant.

Our contention is that the cash surrender value of the policy in controversy should be paid to the appellant trustee to be applied to pay the debts of R. P. Townsend, subject to the lien of the First National Bank of Nashville, Tenn., for $2,600.

Under the provisions of the policy he had the right to the cash surrender value of the policy at the optional period which was payable to him, and it thereby gave him the right to elect how it should be applied, and by the power of attorney executed by him in 1889 to the bank it was the intention to pledge this fund to his creditors, and was an election on his part so to do. It was a fund due him, and him alone, under the terms of the policy.

HUMPHREY & HUMPHREY and L. R. YEAMAN for appellee Connecticut Mut. Life Ins. Co.

POINTS AND AUTHORITIES.

1. The Terms of the Policy.—The option given to Townsend, to surrender the policy and take the cash value, has not been ex- excised. Until this option is exercised, the policy will be continued in force and will remain a claim against the insurance company, payable at Townsend's death to his children or, if his children are not then living, to his legal representatives.

2. Bank's Interest in the Policy.—The First National Bank of Nashville, Tennessee, is claiming a lien on the policy. The bank was for this reason a necessary party, and it was not before the

court. The judgment dismissing the action was, therefore, proper. (Civil Code, section 371.)

3. D. B. Smith was made a party through mistake.

4. The Rights of Townsend's Children.—The children's rights in the policy will never attach unless they survive Townsend and Townsend does not exercise his option to cash the policy.

5. Rights of Townsend's Creditors.—There is no rule by which Townsend could be compelled, in the interest or for the benefit of his creditors, to exercise his option to surrender the policy and accept the cash value thereof. (Ky. Stats., section 655.)

PERKINS & TRIMBLE for appellees D. B. Smith and others.

### POINTS AND AUTHORITIES.

1. Dr. Townsend's children had a vested interest, even though subject to be defeated. (Hopkins v. Hopkins' Admr., 92 Ky., 324; Wirgman v. Miller, 98 Ky., 620; Mut. Life Ins. Co. of Ky. v. Twyman, 28 Ky. Law Rep., 1153.)

2. R. P. Townsend, the insured, had no title to the policy or vested right therein—but simply a naked option. (Stembridge v. Stembridge's Admr., 87 Ky., 91.)

3. The option was purely personal. (Mut. Life Ins. Co. v. Martin, 21 Ky. Law Rep., 1465; Ky. Stats., 1639; 9 Cyc., 620; 21 Am. & Eng. Ency. of Law (new), 934; Duer v. Duffy, 24 L. R. A., 341.)

4. R. P. Townsend had no vendible interest in this policy on the 24th day of June, 1903, when he executed and delivered his deed of general assignment. (Ky. Stats., section 75; Morehead's Admr. v. Mayfield, 109 Ky., 51; Barbour's Admr. v. Larue's Assignee, 21 Ky. Law Rep., 94; Planters' State Bank v. Willingham's Assignee, 111 Ky., 64, and 23 Ky. Law Rep., 445.)

5. To mature the policy in the year 1905, there must have been a strict compliance with the provisions of the contract in that respect. (21 Ency. of Law (2d Ed.), 930; John R. Davis Lumber Co. v. Hartford Life Ins. Co., 37 L. R. A., 131; Litz v. Goosling, 21 L. R. A., 129.)

6. Time is of the essence of the contract. (Stembridge v. Stembridge, 87 Ky., 91; Fry on Spec. Pref. of Contracts, p. 419 and 424; Note to 21 L. R. A., 129; Dyer v. Duffy, 24 L. R. A., 341; Hexter v. U. S. Life Insurance Co., 91 Ky., 357; N. W. Mut. Life Ins. Co. v. Barbour, 92 Ky., 429; Montgomery v. Phoenix Mut. Life Ins. Co., 14 Bush, 51; Mut. Life Ins. Co. v. Jarboe, 19 Ky. Law Rep., 1501; Washington Life Ins. Co. v. Miles, 23 Ky. Law Rep., 1705; Washington Life Ins. Co., v. Lyne, 26 Ky. Law Rep., 1070; 21 Ency. of Law (new), p. 931; 9 Cyc., pp. 603, 604 and 605.)

7. There must have been a surrender of the policy to the insurer at its home office within 30 days from February 4, 1905—this is a condition precedent. (1 May on Insurance, p. 128; Crown Point Iron Co. v. Aetna Ins. Co., 14 L. R. A., 147; Southern Mutual Life Ins. Co. v. Hancock, 6 Ky. Law Rep., 446.)

8. Was there at any time an election to exercise the option, and was the option ever exercised?

(I.) R. P. Townsend did not exercise the option.

II.) The First National Bank cf Nashville, Tennessee, did not exercise the option. (9 Cyc., p. 617.)

(III.) The assignee for creditors (appellant) at no time exercised the option.

9. To surrender said policy within the thirty days, the release and discharge thereof by R. P. Townsend must hae been "to the satisfaction of the company." (9 Cyc., pp. 618 and 620.)

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR—Affirming.

R. P. Townsend on February 4, 1885, took out a policy of insurance upon his life for $10,000. It was a 10-payment life policy, by which, in consideration of the annual payment in advance by the insured, R. P. Townsend, of $619.20 to the insurer, the Connecticut Mutual Life Insurance Company of Hartford, Conn., the latter undertook to pay to the beneficiaries named in the policy, upon the death of the insured, the sum of $10,000. The agreement was to pay the sum insured "to Emma. S. Townsend (the assured), wife of the said insured, for her sole use and benefit, or to her legal representatives, thirty days after due notice and satisfactory evidence of the death of the insured while this contract is in full force and effect; * * * if the said assured die before said insured, the said sum insured above shall be paid to his children, or to the then guardian if under age; or, if there be no such children or descendants of such children then living, the said sum insured

shall be payable to the legal representatives of said insured." There was also this provision in the policy contract: "And at the end of ten years from the date thereof, or at the end of each period of five years thereafter, this policy having been in force during such entire periods for the full sum first above named as insured hereby and not otherwise, this company will pay a cash value therefor, to be ascertained by the table of cash values endorsed hereon and hereby made a part of this contract; such cash value to be payable at its said office upon surrender hereof within thirty days after the end of each such period, to, and this policy to be first released and discharged to the satisfaction of said company by Robert P. Townsend. And it is hereby agreed by all the parties hereto that such surrender, release and discharge shall terminate this policy, and any and every obligation whatsoever of said company thereunder, to any and every person whatsoever." There was also this condition in the policy: "(6) That no assignment of this policy shall be valid, but the company shall have the power at any time, but at its own discretion, to accept a surrender and discharge of the same by the assured and the person nominated therein as payee of the cash value at stipulated periods."

Some time after the insurance was affected, the assured, Emma S. Townsend, died, leaving one child, who is not living, a daughter of R. P. Townsend. Subsequently R. P. Townsend married again, and by the second marriage had issue, one daughter, living. His second wife is yet alive. The insured paid all of the premiums due upon the policy, and it is now fully paid up. On June 5, 1899, the insured, being indebted to the First National Bank of Nashville,

Tenn., in about $2,600, executed to it the following paper, evidently to secure the indebtedness: "Whereas, I, the undersigned, Robert P. Townsend, of Adairville, Kentucky, hold a policy of $10,000 in the Connecticut Mutual Life Insurance Company of Hartford, Connecticut, No. 173,188, issued February 4, 1885, which is now a paid-up policy, and which policy I have this day delivered to the First National Bank of Nashville, Tennessee. And whereas, said policy contains the following provision, to-wit: 'And at the end of ten years from the date hereof, or at the end of each period of five years thereafter, this policy having been in force during such entire periods for the full sum first above named as insured hereby and not otherwise, this company will pay a cash value thereof, to be ascertained by the table of cash values endorsed hereon and hereby made a part of this contract; such cash value to be payable at its said office upon surrender hereof within thirty days after the end of such period, to, and this policy to be first released and discharged to the satisfaction of said company by Robert P. Townsend, the insured. And whereas, I desire that the First National Bank of Nashville, Tennessee, be appointed and constituted my attorney in fact to collect the cash value of said policy, as provided for in the above quoted clause: Now, therefore, I, Robert P. Townsend, aforesaid, do nominate and appoint the First National Bank of Nashville, Tennessee, my attorney in fact to demand and receive of and from said Connecticut Mutual Life Insurance Company of Hartford, Connecticut, any and all amounts which may be due me on said policy. Said bank is authorized to execute all receipts and other acquittances in my name to said insurance company, and in case of its failure to pay, said bank

will bring suit against it and prosecute same in my name. Said bank is also authorized to employ counsel or agents at my expense and to do all things which may be necessary in and about the collection of said policy. However, said bank has authority to permit said policy to remain in force until my death or to collect the cash value thereof at any one of the periods provided for in said policy; it being my intention to leave this question to the discretion of said bank. I do hereby ratify and confirm all the lawful acts and doings of said bank in pursuance of the power and authority hereby communicated, as fully as if I were to do them myself. This June 5th, 1899. (Signed) R. P. Townsend.''

On June 24, 1903, the insured, having become largely indebted, executed a deed of general assignment for the benefit of his creditors. Appellant is the assignee.

On January 2, 1905, appellant filed an amended petition in the action which he had brought to settle the assigned estate, seeking to have the cash surrender value of the insurance policy paid over to him for the benefit of all the creditors of the insured, upon the theory that the insured's interest in the policy had passed to his assignee under the deed. It was alleged that the policy at that time had a cash surrender value of $6,240; that the insured had the right under its terms to surrender it and receive that sum from the insurer; that his right was a right of property, which passed under the deed of assignment; and that appellant as assignee could exercise the option or privilege given by the policy, which he attempted in this manner to do. The insurance company, the Nashville Bank, the insured, and his two children were made defendants to this ancillary

action.  Waiving certain matters of practice, we will take up the main question presented, which is: Did the policy of insurance, or R. P. Townsend's interest in it, pass under the deed of assignment for the benefit of creditors; and could the assignee exercise the privilege given by the policy to the insured, of surrendering it in accordance with its terms, and take its then cash surrender value in discharge of all the company's liability on it?

The estate of the assignor embraced by the general deed of assignment is regulated by section 75, Ky. St. 1903, which reads in part: "The deed of assignment shall be acknowledged by the assignor in the same manner as other deeds, and shall be recorded in the county clerk's office of the county where the assignor resides, and where the business in respect of which the same is made is carried on, and in each county where a tract of land or the greater part thereof conveyed by the deed is situated; and the deed shall vest in the assignee the title to all the estate, real and personal, with all deeds, books and papers relating thereto belonging to the assignor at the time of the making of the assignment; except the property exempt by law shall not pass unless embraced in the deed."  We think it is first necessary to determine the rights of the parties to the contract of insurance, who are (1) the insurer, (2) the insured (R. P. Townsend), and (3) the assured, the beneficiaries named or described in the policy.  At the time of the suit, and of the judgment, the latter were the children of R. P. Townsend.  But, should other children be born to him, or should any of his children die in his lifetime leaving children, the clause in the policy naming its beneficiaries would open up to let them in.  In Hopkins v. Hopkins' Adm'r, 92 Ky. 324,

13 Ky. Law Rep. 707, 17 S. W. 864, the law is thus
stated as to the rights of beneficiaries named in life
insurance policies: "The general rule is that the
right to a policy of insurance, and the money to
become due under it, vests immediately upon its
issual in the person named in it as the beneficiary;
and that this interest, being vested, cannot be trans-
ferred by the insured to any other person. Washing-
ton Central Bank v. Hume, 128 U. S. 195, 9 Sup.
Ct. 41, 32 L. Ed. 370. The vested right cannot be
divested without the consent of the person invested
with it. This is so as to insurance in both mutual and
ordinary life insurance companies. This does not
hold true, however, where the contract of insurance
provides that the insured may change the beneficiary.
In such case it vests conditionally only."

In the case at bar, there was no reservation in the
policy of the right to change the beneficiary. The
only reservation to the insured was the right to
surrender the policy at the end of the first 10 years,
or at the end of any subsequent 5 years, and to receive
in cash its then cash surrender value. And this right
continued only for 30 days immediately following
the 10 and 5 year terms mentioned. Unless, then,
this right was exercised at the time, and in the manner
expressed in the policy, the interest of the named
beneficiaries continued unaffected by it. Their in-
terest was vested, subject to be defeated only (1) if
they died before the insured, or (2) if he, at the time
and in the manner expressed in the policy, exercised
his option to surrender it in exchange for its then
cash surrender value. It was not within the power of
the insured, or within his and the insurer's power,
to alter the terms of the contract so as to affect the
interests of the beneficiaries. The insured had not

the right to assign the policy to another, for value
or not, nor had he the right to pledge it as collateral
to secure his own indebtedness. The assignee could
take no better title than he himself had, which was
that of ultimate beneficiary in event of his failure,
of issue during this life. In the latter event it is
quite likely his assignment to a creditor would be
held to create an equitable lien upon the fund. But
it is contended that the insured has exercised his
option to surrender the policy in exchange for its
cash surrender value. It must be remembered, in
testing this act, that it must be done not only when,
but done in the way, the policy required. This is not
so much for the benefit of the insurer who might
waive the question, but for the assured, the bene-
ficiaries. The power of attorney given to the bank
was not an exercise by the assured of this option.
It was an attempt on his part to give another the
power to exercise an option which he alone had under
the contract. Admitting that one may transfer his
option so as to vest it in his assignee, it must at
least be confined to his option concerning that which
is his alone. If he has, by a tripartite contract, the
option to adopt such a course in his judgment as
would end the estate of one of the parties, the latter
is entitled to have him exercise his own option. A.
might be willing that B. should have the power to
terminate the former's estate; whereas, he would be·
altogether unwilling to risk it with C., although
selected by B. for the purpose. That the beneficiaries
in this policy did not exercise their own will in bring-
ing the contract into existence takes nothing from
the applicability of the principle that one vested
with a power, to be exercised on behalf of or against
another party to the instrument creating it, must

exercise it in person, and may not delegate it to another. Sugden on Powers, 214-224.

In addition, the attempted exercise of the power by the insured was not done in the manner nor at the times specified in the contract. He must have surrendered up this policy to the insurer within 30 days after the termination of the 10 and 5 year periods, respectively, to wit, within 30 days after February 4, 1895, February 4, 1900, February 4, 1905. As it affected the interests of others than the insured and insurer, time was of the essence of this contract.

Furthermore, the bank, though we should hold it had the same right to exercise the power to disappoint the beneficiaries that the insured had, has never exercised that power. In whatever view the subject is looked at, the case always comes back to this point: The right reserved to the insured to surrender the policy at stated intervals in exchange for its cash surrender value has not been exercised, and therefore the vested interest of the beneficiaries remains unaffected by it.

From what has been said it follows that, if the insured could not assign the policy, in spite of its declaration that it was not assignable, and in spite of the vested interests of its beneficiaries, so as to secure a particular debt of his own, he could not assign it for the benefit of his creditors generally so as to vest his assignee with all the rights and power under it that the insured himself had.

Certain cases in this court have involved the rights of the creditors of the insured in policies of life insurance, where there was an assignment for the benefit of creditors. Planters' State Bank v. Willingham's Assignee, 111 Ky. 64, 23 Ky. Law Rep. 445, 63 S. W. 12; Larue's Assignee v. Larue's Adm'r, 96

Ky. 326, 28 S. W. 790, 16 Ky. Law Rep. 641; Barbour's Adm'r v. Larue's Assignee, 106 Ky. 547, 51 S. W. 5, 21 Ky. Law Rep. 94; Morehead Case, 109 Ky. 51, 58 S. W. 473, 22 Ky. Law Rep. 580. It is thought that these cases indicate that a policy of insurance on one's life, in which his estate is the beneficiary, is such property as passes under a general deed of assignment. If the insured's estate is the only beneficiary, and if the policy has been in existence long enough to have a cash value, it is such estate. But that is not this case. Life insurance was primarily for the benefit of the dependent members of the family of the insured. While not exclusively so, nor necessarily so, such is generally its purpose. A man can labor while he lives to feed and clothe those who are dependent on him. It is a natural and commendable desire to provide for the same objects after his death. Such providence is looked upon encouragingly by the law. It is viewed in the same light that homestead and other exemptions are, all of which evidences the humaneness of the law. It recognizes that a man may owe other obligations in this life just as sacred, even in the eyes of the law, as those to his coal dealer or butcher. It admits the obligation to provide, first, at least a reasonable and decent subsistence for our dependent members; that little children have moral and legal rights upon the parents as much entitled to the law's respect and consideration, as creditors have. Therefore, the Legislature of this State has enacted:

"Sec. 654. A policy of insurance on the life of any person expressed to be for the benefit of, or duly assigned, transferred, or made payable to any married woman, or to any person in trust for her, or for her benefit, by whomsoever such transfer may

vol. 127—16

be made, shall inure to her separate use and benefit, and that of her children, independently of her husband or his creditors, or any other person effecting or transferring the same or his creditors. And a married woman may, without consent of her husband, contract, pay for, take out and hold a policy of insurance upon the life or health of her husband or children, or against loss by his or her disablement by accident, and the premiums paid on such policy shall be held to have been her separate estate, and such policy shall likewise inure to her separate use and benefit and that of her children, free from any claim of her husband or others. But if the premium on any policy in this section mentioned is paid by any person with intent to defraud his creditors, an amount equal to the premium so paid, with interest thereon, shall inure to the benefit of said creditors, subject, however, to the statute of limitations." Ky. St. 1903.

"Sec. 655. When a policy of insurance is effected by any person on his own life, or on another life in favor of some person other than himself, having an insurable interest therein, the lawful beneficiary thereof, other than himself or his legal representatives, shall be entitled to its proceeds against the creditors and representatives of the person effecting the same: Provided, that, subject to the statute of limitations, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy; but the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless, before such payment, the company shall have written notice by, or in behalf of, some creditor, with

specification of the amount claimed, claiming to recover for certain premiums paid in fraud of creditors.''

There is no claim in this case that the insured diverted an unreasonable amount of his estate to life insurance for the benefit of his family. At that time he was a very rich man. His creditors then had no right to complain. The policy was fully paid up years ago, and while he was still in affluent circumstances. There is no hint that he acted in any fraudulent sense in the matter. It was therefore allowable, without prejudicing his creditor's rights, that he take out the policy for the benefit of his family as he did. It was to insure them against mishap in fortune as well as against his own premature death. Such insurance is made exempt, by the statutes quoted, from the debts of the insured. That it was competent for the Legislature to have done so is not open to question. That such insurance, honestly effected, is not liable for the debts of the insured, has been held in Hise v. Hartford Ins. Co., 90 Ky. 101, 11 Ky. Law Rep. 924, 13 S. W. 367, 29 Am. St. Rep. 358; Thompson v. Cundiff, 11 Bush, 567; Stokes v. Coffey, 8 Bush, 583; Hopkins v. Hopkins, supra; Wirgman v. Miller, 98 Ky. 620, 33 S. W. 937, 17 Ky. Law Rep. 1174; Morehead's Adm'r v. Mayfield, 109 Ky. 51, 58 S. W. 473, 22 Ky. Law Rep. 580. Those cases, we concede, dealt with the question of the right of one indebted to insure his life for some members of his family, and to pay for it out of his means; while here the debtor insures his own life for the benefit of members of his family, but in case they die before he does, then for the benefit of his estate in that contingency, reserving to himself also the right to anticipate the

sum insured and apply it to his own use if he so
. chose.

Holding that the option to cash the policy has not
been exercised, and that the power is not assignable;
it is nevertheless such estate as that under a general
deed of assignment will not pass by law to the
assignee for creditors. His interest is remotely con-
tingent, and incapable of being valued. It is so
woven in with other considerations, such as his con-
ception of duty to his children, and the exercise of
judgment in their behalf and in his own, that there
can be no certain way of estimating the value of
that interest, or of disposing of it without destroying
or endangering other interests under the policy which
are primary to those of the insured. The option is,
baldly, to let his children have this provision for
their future support, or to take it himself. Whether
he should take it himself involves the exercise of
judgment, discretion, and his own conception of duty.
No one else has the right to exercise it for him, nor
against the children; no one else could be actuated
by the same impulse. Suppose the case were that
the insured merely had reserved the power to change
the beneficiary. We have time and again held, since
the Hopkins Case, supra, that such a power reserved
in the policy was not affected by the statutes quoted
above. Could he be required to exercise it against
his children, and in favor of his creditors? Or could
he have been required to so exercise it as to give it
all to one child who was indebted, so that the cred-
itors might get it, and so as to exclude the other
child? Is this case different in principle from those
supposed? We think not. If a debtor has a home-
stead exemption, or the two horses exempt from
execution, could he be compelled to sell and convert

the property into cash (for he has the right and power to do so) so that his creditors could reach it? A married woman may make a will. She may exclude her husband from her estate. But it is subject to his rights of renunciation within one year, in which event he would take under the statute of descent. It has been held by this court that an indebted husband could not be compelled to exercise his option to renounce the will which gave all the property to his children, and to take his part under the statute. Bottom v. Fultz, 124 Ky. 302, 98 S. W. 1037, 30 Ky. Law Rep. 479. We are unable to distinguish between the principle in that case and this one.

A statute of the United States (Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) provides that life policies of bankrupts shall be subject to administration by the trustee for the benefit of creditors. But this proceeding is not under that statute. Nor can it elucidate the principle under consideration to note the decisions of the federal court expounding that statute, although it might be noted, in passing, that Congress seems to have deemed it necessary to expressly include such policies, or they probably would not have passed under the bankrupt proceedings.

We conclude that the life policy in this suit was not assignable so as to affect the interests of the beneficiaries provided in it, that it did not pass to the assignee under the deed of assignment for creditors, and that therefore the assignee had no right of action upon it or to recover it.

Such was the judgment of the circuit court.

It is affirmed.

(HOBSON, J., dissenting.)

In the application for the policy, which was made a part of it, there was this: "To whom is this insurance payable in case of loss? Emma S. Townsend. Relationship to the insured? Wife. To whom is it payable in case the endowment insurance, if the person insured survives the term, and to whom if the policy be surrendered for a cash value as herein provided? To myself." The fundamental error in the opinion, it seems to me, is that it fails to recognize that an option to collect $6,240 is a right to that much money, and therefore property. Few insurance policies require the insured to accept the cash surrender value, and, if the right to accept the cash surrender value is not property, then in practically no cases would the insurance policy pass to the assignee for the benefit of creditors, and the rule so often announced by this court that insurance policies having a cash surrender value pass to the assignee under a deed of assignment amounts to nothing. Larue's Assignee v. Larue's Adm'r, 96 Ky. 326, 16 Ky. Law Rep. 641, 28 S. W. 790; Barbour's Adm'r v. Larue's Assignee, 106 Ky. 547, 51 S. W. 5, 21 Ky. Law Rep. 94; Planters' Bank v. Willingham's Assignee, 111 Ky. 64, 23 Ky. Law Rep. 345, 63 S. W. 12; Morehead's Adm'r v. Mayfield, 109 Ky. 51, 58 S. W. 473, 22 Ky. Law Rep. 580. The effect of the ruling is that, although Townsend had assigned all his property for the benefit of his creditors, he still had $6,240 beyond the reach of his creditors, which he could collect at the end of the tontine period and put in his pocket to commence business on again. The fact that the money was not due at the date of

the assignment no more exempts it from the claims of the assignee than the fact that a note or other obligation was not due would exempt it. Our statute provides that all the property of the assignor shall vest in the assignee. It does not except anything except the exempt property. Ky. St. 1903, section 75. There is no exception in the statute of the property held by the assignor in insurance policies. The deed of assignment in this case transferred to the assignee all of the assignor's property, real and personal, "also all notes, stocks, bonds, choses in action, and all other property of every kind and description." When the court refuses to adjudge the money in controversy to the assignee, it goes without saying that the assignor may collect his $6,240 when he gets ready, and if such a right is not included by the words "choses in action and all other property of any kind and description," it is difficult to understand what these words would include.

In disposing of the authorities under the United States bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), the court says:

"A statute of the United States (the bankruptcy act) provides that life policies of bankrupts shall be subject to administration by the trustee for the benefit of creditors. But this proceeding is not under that statute. Nor can it elucidate the principle under consideration to note the decisions of the federal court expounding that statute, although it might be noted, in passing, that Congress seems to have deemed it necessary to expressly include such policies, or they probably would not have passed under the bankrupt proceedings." It is hard to understand how the court could say this in view of the authorities

which were before it. The bankruptcy statute is just like our statute, in that it vests in the trustee in bankruptcy all the property of the bankrupt. There then follows certain exceptions of things which do not pass, and to one of these exceptions is attached this proviso: "Provided, that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own and carry such policy free from the claims participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets." Construing this proviso in Holden v. Stratton, 198 U. S. 213, 25 Sup. Ct. 659, 49 L. Ed. 1018, the court said: "As section 70a deals only with property which, not being exempt, passes to the trustee, the mission of the proviso, was in the interest of the perpetuation of policies of life insurance to provide a rule by which, where such policies passed to the trustee because they were not exempt, if they had a surrender value their future operation could be preserved by vesting the bankrupt with the privilege of paying such surrender value, whereby the policy would be withdrawn out of the category of an asset of the estate. That is to say, the purpose of the proviso was to confer a benefit upon the insured bankrupt by limiting the character of the interest in a nonexempt life insurance policy which should pass to the trustee, and not to cause such a policy when exempt to become an asset of the estate." In other words, the purpose of the proviso was just the

opposite to that indicated by this court. It does not enlarge the rights of the trustee. It simply gives the bankrupt a right he would not otherwise have. Under it, the bankrupt estate gets what it would collect from the insurance company, and the insured at the same time preserves his insurance if he wishes to do so. Not only so, but under the old bankruptcy law, which did not contain this proviso, where a policy had a cash surrender value, it was held to pass to the trustee. Holden v. Stratton, 198 U. S. 214, 25 Sup. Ct. 656, 49 L. Ed. 1018; In re Newland, 6 Ben. 342, Fed. Cas. No. 10,170; In re McKinney (D. C.) 15 Fed. 535. The United States courts also hold, under the present act, that policies pass to the trustee which have a real value, although they have no cash surrender value and are not within the provisions of section 70a. In re Slingluff (D. C.) 106 Fed. 154; In re Mertens (D. C.) 131 Fed. 972; Gould v. N. Y. Life Ins. Co. (D. C.) 132 Fed. 927; In re Coleman, 136 Fed. 818, 69 C. C. A. 496; Van Kirk v. Vermont Slate Co. (D. C.) 140 Fed. 38. These courts further hold uniformly that an option to accept a cash surrender value is property and passes to the trustee in bankruptcy. In re Diack (D. C.) 100 Fed. 770; In re Boardman (D. C.) 103 Fed. 783; In re Holden, 113 Fed. 141, 51 C. C. A. 97; In re Mertens, 142 Fed. 445, 73 C. C. A. 561; Clark v. Equitable Life Assurance Society (C. C.) 143 Fed. 175; Hiscock v. Mertens, 205 U. S. 202, 27 Sup. Ct. 488, 51 L. Ed. 771. That this policy would pass to the trustee in bankruptcy under the rulings of the United States courts must be admitted. The ruling of this court can have only the effect to compel creditors to preserve their rights in bankruptcy courts, and what good will come from this is hard to see. The rules for the adminis-

tration of an insolvent estate should be the same in both courts, so that confusion may be avoided.

The court quotes at length sections 654 and 655, Ky. St. 1903. These sections, so far as they pertain to this case, are copied from the act of 1870. The facts as to that act are these: In Stokes v. Coffey, 8 Bush, 533, this court held that if an insolvent debtor insured his life for the benefit of his wife, so as to make an unreasonable provision for her, it was fraudulent as to antecedent creditors. To protect insurance of this character for the benefit of the wife, the Legislature passed the act referred to. Thompson v. Cundiff, 11 Bush, 567. The act applies to insurance for the benefit of the wife and children. It does not apply to insurance which the husband takes out for his own benefit. If the policy in question had not contained the provision that, in case the insured survived the term, the cash surrender value should be paid to him, the act would apply; but, so far as it is a contract to pay money to him, it is not within the language or the purpose of the statute. It has been supposed that our laws are so framed that human ingenuity could devise no plan by which a man might hold property free from the claims of his creditors. The statute was not intended to contravene this principle, and there is nothing in the subsequent decisions justifying such a construction. The interest of the children in the policy in contest is not absolute. It is not an insurance for their benefit, for the insured may yet exercise his right to accept the cash surrender value when he needs the money.

The case of Bottom v. Fultz, 124 Ky. 302, 98 S. W. 1037, 30 Ky. Law Rep. 479, has no application. The right of the husband to renounce the wife's will is a purely personal privilege conferred on him by the

statute to protect him from injustice by the will of the wife. It is not property which the creditors can subject to their debts. To so hold would be to defeat the purpose of the statute. This doctrine is not applicable to rights created by contract which are property. When the husband does not within the year allowed him renounce the will of the wife, the rights of the devises become absolute. Here the insured may in future, when he wishes to, turn in the policy and accept the cash surrender value. The rights of the children under the policy are not absolute as long as he lives.

Every chose in action is assignable. Anything that is assignable may be pledged for debt. The tontine feature of the policy did not change its legal character. This was simply for the convenience of the insurance company. The clause in the policy forbidding its assignment was also solely for the company's protection. If it was not affected, no one else could complain. The bank had a lien on the policy for its debt, and the right to surrender it pursuant to the policy and accept the cash surrender value. If it did not do so, Townsend could do so and receive himself the surplus over and above the bank debt. This right which he had to receive about $4,000 passed by his assignment for the benefit of his creditors. The policy had been fully paid up for years before the assignment was made. The fund was simply so much laid up by the insured for a rainy day. When he needed the money, he could surrender the policy and collect the cash surrender value. It is a novel idea that a man may have insurance which he may collect and use if he remains solvent, but that if he becomes insolvent his creditors cannot reach it. On the contrary, as settled by this court in

a long line of decisions, the law is that a man cannot have property which is beyond the reach of his creditors, and that he cannot, by providing in the deed or settlement that his rights shall not be assignable, tie the hands of creditors. There is no reason that money payable by an insurance company should stand differently from money payable under other engagements or settlements.

For these reasons, I dissent from the opinion of the court.

LASSING and BARKER, JJ., concur in this dissent.