332 KENTUCKY REPORTS. [Vol. 136.

Bains, &c. v. Glb. B. & T. Co—1st. N. B. of Paducah, &c. v. Bains, &c.

CASE 38.—CONSOLIDATED ACTIONS BY THE GLOBE BANK & TRUST COMPANY AND THE FIRST NATIONAL BANK OF PADUCAH AGAINST GEORGE W. BAINS AND OTHERS.—January 20, 1910.

## Bains, &c. v. Globe Bank & Trust Co.
## First National Bank of Paducah, &c. v. Bains, &c.

Appeal from McCracken Circuit Court.

W. M. REED, Circuit Judge:

From the judgment, some of the defendants appeal and plaintiffs file cross-appeal. Judgment on cross-appeal affirmed and on appeal of defendants reversed.

1. Wills—Married Women—Rights of Husband.—Under the statute giving the wife the right to dispose of her property by will, and giving the husband the right to elect to take under the will, a wife's property, not subject to the husband's creditors, passes under her will, unless the husband elects to take under the statute, and the husband's creditors may not complain of his election to take under the will, and equity will not compel him to exercise his election for the benefit of his creditors.

2. Life Estates—Enhancement in Value—Right of Remaindermen.—The enhancement in the value of corporate stock while in the hands of the life tenant under a will bequeathing the same to one for life, with gift over to others, belongs to the remaindermen.

D. G. PARK for First National Bank.

JOHN G. MILLER, W. MIKE OLIVER, HENDRICK & CORBETT and WM. MARBLE for heirs and devisees of Willhelm.

BRADSHAW & BRADSHAW for Bains.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

The Globe Bank & Trust Company brought this suit in the McCracken Circuit Court to enforce the collection of two notes aggregating the sum of $5,-811.35, executed to it by the Register Newspaper Company, with James E. Wilhelm, M. E. Beadles, and Ella B. Wilhelm as sureties; the latter being the wife of James E. Wilhelm, and Mrs. Beadles being his mother-in-law, the widow of William E. Beadles, who died in October, 1893. Mrs. Wilhelm executed no mortgage to secure the notes, and they were therefore unenforceable against her, as she was only a surety in them. Prior to the death of William Beadles, he deeded to her real estate in Paducah, which is now very valuable. She died on April 4, 1908, leaving surviving her her husband and four children. She and her husband were married in 1887, and had issue born in 1889. The bank insisted that at her death her husband took an estate by the curtesy in this land, and undertook to subject it to its debt. She left a will, which was duly admitted to probate, by which she devised the land to her children, giving her husband in effect a home there with them, and devised to him other property. Her will was duly admitted to probate and was not renounced by the husband; on the contrary he accepted its provisions and took under it. It is insisted for the bank that in so doing he practiced a fraud upon his creditors, and that, notwithstanding the will and the fact that he has not renounced the will, he still owns a life estate in the land which may be subjected to its debt. The circuit court so held, and the devisees of Mrs. Wilhelm appeal.

Under the law in force before the adoption of the present statutes, a married woman might be empowered by a decree in chancery to dispose of her

property by will.   Mrs. Sallie H. Wills was so em-
powered and made a will devising her land to others.
Her husband's creditors interposed and insisted that
the land was subject to their debts.   The court, re-
jecting this, in Garner v. Wills, 92 Ky. 388, 17 S. W.
1024, 13 Ky. Law Rep. 727, said:

"The power conferred upon Mrs. Wills by that
judgment, if a valid judgment, had the effect to re-
move the disability of coverture in respect to dis-
posing of her real estate by will and to deprive her
husband of any interest therein that the law would
have otherwise given him at her death, had she not
disposed of the same by will.  But it is said such pow-
er should not be so construed as to deprive the hus-
band of his right to curtesy in his wife's land so far
at least, as creditors are concerned, as that would be
a fraud upon them.  But why would the exercise of
such power be any more a fraud upon them than
the sale or gift of the land by the husband and wife.
If the wife had conveyed her land by deed of gift
to her children, the husband joining in the deed to his
creditors, after her death, could not complain, be-
cause he had at the time of the conveyance no inter-
est in the land that was subject to their demands
against him; his right to curtesy, even if there were
issue born alive, would depend upon the contingency
of his wife dying first, or said estate being disposed
of in her lifetime.  His right of curtesy does not at-
tach upon marriage like the wife's inchoate right to
dower attaches upon marriage, which right she can-
not be deprived of without her consent exercised in a
certain way; but the husband's right to curtesy is en-
tirely contingent upon having issue born alive and his
wife's death preceding his, the owner of the land;
and, as said, if he and his wife sell the land, his cred-

itors cannot complain of being defrauded by the sale; and, so if the court empowers her to dispose of her land, which includes his contingent right of curtesy, by her will. We percieve no difference in the effect upon creditors in the two cases."

The same question was again presented to this court in Bottom v. Fultz, 124 Ky. 302, 98 S. W. 1037, 30 Ky. Law Rep. 479. The court, reaching the same conclusion under the present statute, said: "This court has decided in the cases of Brand v. Brand (109 Ky. 721), 60 S. W. 704, 22 Ky. Law Rep. 1366, Gillispie v. Boisseau, 64 S. W. 730, 23 Ky. Law Rep. 1046, and Smoot v. Heyser, 113 Ky. 81, 67 S. W. 21, 23 Ky. Law Rep. 2401, that a husband may renounce the will of his wife as provided by section 2067 (Ky. St. 1903). This is a personal privilege given to the husband, and it is one which he may exercise or not, at his own pleasure; and we are of the opinion that the court could not require of appellant that he exercise that right. The law provides that he may, within one year, renounce the will and elect to take under the law. If he wishes to avail himself of his statutory right, he must follow the provisions of the statute, and his failure to do so within the time prescribed amounts to an election on his part to stand by the provisions of the will; but he has the entire year within which to act. The trial judge was evidently of opinion that appellant could not be required to elect, and, as he had not renounced the will as prescribed by law, that he was taking under it."

We adhere to the rule thus laid down. The cases to which we are referred in other jurisdictions holding otherwise seem to have turned on statutes which differ from ours. Our statutes give the wife the right to dispose of her property by will; she is given

336        KENTUCKY· REPORTS.    [Vol. 136.

Bains, &c. v. Glb. B. & T. Co—.1st. N. B. of Paducah, &c. v. Bains, &c.

the right to dispose of all of her estate in this way.
The husband, like any other devisee, is given by the
statute the election to take·under the will or not; but
the chancellor will not for the benefit of his creditors
control him in exercising his discretion in this matter.
Hill, etc., v. Cornwall & Bro.,  95 Ky. 512, 26 S. W.
540, 16 Ky. Law Rep. 97; Townsend v. Townsend,
127 Ky. 230, 105 S. W. 937; 32 Ky. Law Rep. 240,
16 L. R. A. (N. S.) 316.

The object of the statute was to protect the wife
not only in the enjoyment of her property while liv-
ing, but to enable her to dispose of it by will at her
death; and the husband's creditors cannot complain
of any disposition which she makes of the property.
It was not subject to their debts while she lived. She
and her husband could have deeded it to the children
then, and the creditors could not· have complained.
When the same result is, reached by will, they are
equally without ground of complaint.  Her property
passes under her will, unless the will is renounced
as provided by the statute.

This disposes of the first appeal.  The other appeal
arises in this way:  The First National Bank of
Paducah held similar notes, and it brought an action
for their enforcement.  This action was consolidated
with the action which had been brought by the Globe
Bank & Trust Company; and in the consolidated
actions both banks undertook to hold the estate of
Mrs. Wilhelm and her sister,  Mrs. Bains, who had
also died, liable on these facts:  They were the daugh-
ters of Mrs. Beadles, and it was insisted that they had
received estate from her to the amount of the debts
and were therefore liable for the debts.  The estate
which Mrs. Beadles had came to her from her hus-
band, William Beadles, under the following provisions

of his will: "I give to my wife, Mary E. Beadles, all of my estate, both real and personal, to have, use, and enjoy during her life time, and at her death, to be equally divided between my two daughters Mrs. Ella Wilhelm and Mrs. Mary Perkins." Mary Perkins named in the will was afterwards Mary Bains. The banks insisted that Mrs. Beadles under the will of her husband took all the estate as life tenant, that she did not spend the income, that the accumulation of income belonged to her in her own right, and that this property descended from her at her death to her two daughters, and did not come to them under their father's will.

The personal property that came to Mrs. Beadles, as shown by the appraisement, amounted to $37,723.28. In addition to this, she received about $1,550 that was not appraised, making the total amount received by her $39,273.28. After her death the two daughters made a division of the estate, and in this division the estate was put at $61,918; but this division included the real estate to the extent of $13,000 which had been in the hands of Mrs. Beadles, and it also included the property deeded to Mrs. Wilhelm which was valued at $5,000, making it in all $18,000 of real estate. It also included $1,600 advanced to Mrs. Wilhelm by her father before his death, and $3,000 advanced to Mrs. Baines by him. These sums aggregated $4,600, and when added to the real estate make $22,600. In addition to this, the bank stock in this division was valued much higher than in the appraisement. The enhancement in the value of the stock while in the hands of the life tenant belonged to the remaindermen. Letcher v. German National Bank, 134 Ky. 24, 119 S. W. 236. When we deduct all

of these items from $61,918, the amount the
property was appraised at in the division
between the two daughters, the balance is a little
less than the amount of the estate that went
into the hands of Mrs. Beadles. In addition
to this, among the property which was turned
over to the two daughters were notes and other
things not of the cash value that they were put at in
that appraisement; and so, on the whole, it is appar-
ent that, instead of the fund increasing in the hands
of the life tenant, there was a considerable shrinkage.
This conclusion makes it unnecessary for us to con-
sider what were Mrs. Beadles' rights under the will
of her husband, for we conclude that there was no
accumulation of income while the estate remained in
her hands.

On the appeal of the Globe Bank & Trust Com-
pany, and the First National Bank, and on the cross-
appeal of the Globe Bank & Trust Company, the judg-
ment is affirmed. On the appeal of J. E. Wilhelm,
G. W. Bains, etc., the judgment is reversed, and
cause remanded to the circuit court with directions
to the circuit court to dismiss the plaintiff's petitions.