## Case No. 10,169.

### In re NEWLAND.

[Affirming Case No. 10,171. Nowhere reported; opinion not now accessible.]

---

## Case No. 10,170.

### In re NEWLAND.

[6 Ben. 342: [2] 7 N. B. R. 477.]

District Court, S. D. New York. Feb. 7, 1873.

SECURITY FOR DEBT—INSURANCE ON BANKRUPT'S LIFE—PRESENT VALUE OF POLICY.

N.. having borrowed money of his mother-in-law, gave her his notes for it, and, as security

---

[1] See the opinion of BALLARD, J., to the same effect. in Cooke v. Ford [Case No. 3,173].

[2] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

for them, procured a policy of insurance on his life to the amount of $4,000, for her benefit, and paid the premiums on it up to the date of his bankruptcy. On a surrender of the policy, she would be entitled, in its stead, to a paid up policy for $158. The cash value of the policy, at the date of the bankruptcy, if surrendered, was $13.13. The mother-in-law proved her debt, to the amount of $3,450, setting forth the security: *Held*, that, in order to ascertain the amount on which she was entitled to dividends from the estate, the cash value of the policy, if surrendered, viz., $13.13. should be deducted from the amount of the debt, as proved.

[Cited in Re McKinney, 15 Fed. 539.]

[In the matter of Frank F. Newland, a bankrupt.]

James Clark, for creditor.
David Thornton, for assignee.

BLATCHFORD, District Judge. The petition in this case, a voluntary one, was filed on the 16th of April, 1872. Mrs. Van Antwerp, the mother-in-law of the bankrupt, has proved a debt against his estate, on promissory notes made by him, and held by her, for $4,000, the consideration for which was money loaned by her to him, the amount of the debt proved being $3,450, there having been $550 paid on account of the $4,000. On the 16th of April, 1870, the bankrupt took out a policy of insurance on his own life, in a life insurance company, for $4,000, for the benefit of Mrs. Van Antwerp, payable to her, as collateral security for said debt, and paid the quarter-yearly premiums, $19.84 each, up to the date of his bankruptcy. On the surrender of this policy, the company would, by its terms, issue, in its stead, a paid up policy for $158. At the present age of the bankrupt, it would require the payment now of a single premium of $49.99, to purchase a paid up policy in the company for $158. The cash value of the $4,000 policy, on a surrender of it to the company, is $13.13. The proof of debt sets forth the security.

Two questions are certified by the register as arising on the foregoing facts: (1) Whether the assignee in bankruptcy can require Mrs. Van Antwerp either to surrender the policy to him and take a dividend on all her claim, or to retain the policy and withdraw her proof of debt. (2) If such election on her part cannot be required, what shall be taken as the value of the collateral security to be deducted from the debt, so as to arrive at the amount on which Mrs. Van Antwerp is to receive a dividend from the estate?

It is contended, on the part of the assignee, that, as the bankrupt took out the policy, and for two years paid the premiums, the assignee has a claim to whatever surplus of the amount insured there may be, after paying the debt due Mrs. Van Antwerp, and that she could not retain such surplus, as against the assignee; that the payment of the amount insured will pay her debt; that dividends to her must cease when the amount insured is paid; and that, if she shall receive dividends on the $3,450, or on that amount less the $13.-13, or less the $158, and then the amount insured shall be paid, she will have received the dividends, and the $3,450 in addition. Hence, the assignee insists, that Mrs. Van Antwerp ought to surrender to the assignee her interest in the policy, and prove her claim for the $3,450, as a debt unsecured, or else look to the policy as full security, and relinquish all claim on the assets of the estate.

For the creditor, Mrs. Van Antwerp, it is contended, that this policy, the bankrupt being alive, has now no fixed, definite value, other than its present cash surrender value of $13.13; that, outside of that, everything is contingent, as well the continued payment of the premiums, as the duration of the life insured, and the continued solvency of the company; that, if the future payments of premiums shall be made by the creditor, she will be giving to the policy all its value; that the future payments of the premiums may be made by the bankrupt, out of after acquired property, if he does not thereby contravene any provision of the bankruptcy act; that it would not be equitable to require the creditor to deduct from her claim more than the present cash surrender value of the policy; that such value is the entire present value produced by the payments of premiums by the bankrupt; that the entire security which the bankrupt has furnished to the creditor, by making such payments, is the present cash surrender value of the policy; that the contingencies before mentioned make it impossible to consider the present value of the policy as being $4,000; that the $158, as the amount of a paid up policy which would now be issued for the premiums already paid, ought not to be taken as the present value of the $4,000 policy, because of the contingencies as to the duration of the life insured and as to the continued solvency of the company; and that, consequently, the only certain present value is the $13.13 cash surrender value.

The questions involved are ones as to which no direct authorities are to be found, either in England or in the United States. It is well settled, that where a debtor, at his own expense, effects an insurance on his life, as security to a creditor, the representative of the debtor is entitled to the surplus after the debt is paid. So, too, if such a debtor, in his lifetime, pays the debt, he is entitled to have the policy delivered up to him. Lea v. Hinton, 5 De Gex, M. & G. 823; Drysdale v. Piggott, 22 Beav. 238; Courtenay v. Wright, 2 Giff. 337; Morland v. Isaac, 20 Beav. 389.

The policy of insurance, as a security, is not, within the language of section 19 of the bankruptcy act, "a mortgage or pledge of real or personal property of the bankrupt, or a lien thereon for securing the payment of a debt" owing to the creditor from the bankrupt; but, nevertheless, the creditor must, in some proper way, credit on the debt the present value of the security. It seems to me impossible to say that the present value of the policy is more than its cash surrender

value. But for its having such cash surrender value, it could not be said to have any appreciable value. Parker v. Marquis of Anglesey, 20 Wkly. Rep. 162, 25 Law T. (N. S.) 482. It is true, that the bankrupt paid the premiums for two years, but that has given no present appreciable value to the policy other than its cash surrender value. It is true, that, if the policy were now due, the creditor could not hold, 'as against the assignee, the surplus beyond her debt. But, it may require the payment of the premiums for many years, before the death of the person insured will make the policy due; and those premiums, with the accumulating interest on the debt, may, with the debt, amount to a sum much larger than the amount of the policy. It would not be proper, even if the creditor should so desire, to compel the assignee to assume the payment of the premiums on the policy for the future. In fifty years, and the assured may live that length of time, the premiums, not calculating interest on them, would amount to about $4,000. Besides, the estate could not be kept unsettled, to carry this policy; and, if the assignee took it now, it would now be worth to him, to dispose of, in its present shape, no larger sum than its cash surrender value. That amount he is entitled to have allowed at once on the debt, the balance of it being proved. It is not proper to require the creditor to prove for nothing and look to the policy alone, because the policy is now worth only the $13.13.

In every view, the first question must be answered in the negative, and the value of the policy, to be deducted from the debt, must be taken at $13.13.

[NOTE. The policy was kept alive by the payment by the defendant's mother-in-law, Mrs. Van Antwerp, of the premiums afterwards due upon it. She received a dividend on the debt due her from the bankrupt estate. Subsequently the bankrupt died. The case was then before the court upon the question of the apportionment of the amount received upon the policy from the insurance company, between the assignee and Mrs. Van Antwerp. Case No. 10,171.]