## In re DAVISON.

(District Court, N. D. New York. April 14, 1910.)

1. BANKRUPTCY (§ 323*)—SECURED CLAIMS—SECURITY—VALUATION—PROCEEDINGS.

Where a bankrupt's creditor held certain insurance policies, having no cash surrender value, as security for its claim, and the creditor and the trustee could not agree on their valuation, the creditor was entitled to have the value fixed by litigation before the referee, under Bankr. Law July 1, 1898, c. 541, §§ 57, 58, 30 Stat. 560, 561 (U. S. Comp. St. 1901, pp. 3443, 3444), providing that the value of securities shall be determined by converting them into money according to the agreement pursuant to which they were delivered to the creditor, or by agreement, compromise, or litigation, as the court may direct, and the amount of such value credited on the claims and dividends paid on the balance.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 503, 505, 513; Dec. Dig. § 323.*]

2. INSURANCE (§ 222*)—INSURANCE POLICIES—CONVERSION.

Where a bankrupt assigned certain insurance policies having no surrender value, to a bank as collateral security for certain loans, and there was no agreement as to the mode in which the value of the policies should be determined or the manner in which they should be sold or disposed of to realize thereon in case of the buyer's default, the bank was authorized at its election to convert the policies into money and apply the proceeds to the debt, and was not required to continue the loan until the maturity of the policies, paying the premiums to preserve the security and trusting to it for reimbursement on the death of the insured.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 492; Dec. Dig. 222.*]

3. BANKRUPTCY (§ 323*)—SECURITY—VALUATION—SURRENDER.

Where a bank held certain policies as security for a debt against a bankrupt, and, on bankruptcy intervening, the policies were valued in litigation before the referee, and the amount of such value deducted from the bank's claim in ascertaining the amount on which it was entitled to dividends from the bankrupt's estate, but no offer was made by the trustee to redeem the policies in accordance with the pledge, the bank was not required to surrender them to the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 323.*]

---

In the matter of the bankrupt proceedings of Charles M. Davison. On petition of the Citizens' National Bank for review of a referee's order for settlement of allowance of trustee's account involving a prior order fixing the value of a secured creditor. Affirmed.

Nash Rockwood, for Citizens' National Bank of Saratoga Springs.
Clarence B. Kilmer, for First National Bank of Saratoga Springs, a creditor.

RAY, District Judge. Charles M. Davison was duly adjudicated a bankrupt on the 5th day of May, 1903. The first meeting of creditors was held June 1, 1903, when the First National Bank of Saratoga Springs, N. Y., filed its proofs of claim amounting to $16,127.42 represented by the promissory notes of the bankrupt held by the bank. As collateral security to such indebtedness the said bank held certain life insurance policies upon the life of said Davison calling for about $17,500 on the death of Davison, and giving certain rights and privileges by way of paid-up policies, etc., at an earlier day at election of insured. The annual premiums required to keep same alive amounted to between $800 and $900. The proof of claim alleged a gross indebtedness of $16,127.42, the value of the policies held as security to be $2,714.45, and that the claim over and above such security was $13,-413.97. Since the bankruptcy the said bank has paid the premiums to keep said four policies alive. About July, 1903, the said bank filed a petition for the ascertainment or determination of the value of such securities held by said bank under section 57h of the bankruptcy law. Act July 1, 1898, c. 541, 30 Stat. 560 (U. S. Comp. St. 1901, p. 3443). The trustee took issue thereon and the referee filed an opinion January 25, 1904, as follows:

"There being no surrender value to the policies in the present case it will be necessary to determine their value by arbitration unless some satisfactory accommodation between the bank and the trustee can be reached. Whatever order shall be necessary may be entered, or, in case of disagreement, will be settled upon notice."

No agreement was reached, and finally, November 16, 1906, the referee made an order directing that their values be determined by litigation before him. Thereupon proofs were taken and an order was entered December 13, 1907, determining the value of the policies as $3,500, and allowing the claim after deducting said sum at $12,627.42. No exception was taken to either of these orders, and there was no appeal or petition for a review until April 2, 1909, when the Citizens' National Bank, a creditor, filed its petition of review. December 31, 1908, at a meeting of creditors held for the purpose of examining and passing upon the account of the trustee same was approved and allowed, and a first and final dividend was declared under which the said First National Bank became entitled to the sum of $2,031.75. On such accounting the said bank without objection proved that since the adjudication in bankruptcy of said Davison it has paid the sum of $5,568.89 in premiums to protect and preserve such security in force.

As the policies had no cash surrender value, a conceded fact, the referee proceeded on due notice and hearing to determine the value of

such securities, policies, under subdivision "h" of section 57, and, as it was not done by agreement, determined that it should be done by litigation, and the litigation was had. That subdivision clearly authorizes the determination of the value of securities held by secured creditors by the mode here adopted and it is conclusive, no error in the admission or rejection of evidence being alleged, and no error in the result reached being claimed, provided the terms of the agreement pursuant to which the securities were delivered to the bank do not point out a mode for converting them into money or for ascertaining their actual value different from that adopted. Section 57a and section 57h read as follows:

"a. Proof of claims shall consist of a statement under oath, in writing, signed by a creditor setting forth the claim, the consideration therefor, and whether any, and, if so what, securities are held therefor, and whether any, and, if so what, payments have been made thereon, and that the sum claimed is justly owing from the bankrupt to the creditor. * * *

"h. The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors or by such creditors and the trustee, by agreement, arbitration, compromise, or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance."

The assignments to the bank of the two policies issued by the New York Life Insurance Company were straight-out assignments "as security for all notes signed by me, or to be signed by me, or indorsed by me, and all renewals of the same in whole or in part." There is no suggestion of any agreement as to the mode in which the value of the policies shall be determined, or the manner in which they shall be sold or disposed of for the purpose of realizing thereon in case the assignor (insured) should not pay the notes at maturity. It was of course contemplated that the bank in such event could, if it saw fit, convert them into money and collect in due course any balance. The bank did not agree to continue the loan until the maturity of the policies, paying the premiums, if necessary to preserve the security, and trust to the security for reimbursement on the death of the insured. Nor did it expressly or impliedly agree that, if it saw fit to realize what it could on the securities in case of default in payment of the notes, it would take pay or realize in one of the modes specified in the policies themselves; that is, by exercising one of the options. The assignments to the bank of the two policies issued by the Home Life Insurance Company are quite different in terms. They read:

"For value received, I do hereby assign, transfer and set over the above-described policy of assurance and all sums of money, interest, benefit and advantage whatsoever, now due or hereafter to become due by virtue thereof, subject to all the terms and conditions therein expressed unto the First National Bank of Saratoga Springs, New York, in trust for the following uses and purposes, viz.: First to secure to it the payment of any sum or sums of money which, at the date of any settlement of the policy, may be due and owing from me for any moneys which I may have received from it, or which it may have paid or be liable to pay for me, or for premiums on the said policy with interest. Second, to pay the remainder of the amount which it may receive upon the said policy according to its terms, and I do hereby direct, authorize and empower the said trustee to demand and collect the amount assured by the said policy and to apply and pay over the same as aforesaid."

These assignments are (1) of the policies and of all sums of money due or to become due thereon; (2) subject to all the terms and conditions therein expressed; (3) in trust, however, for the following purposes, viz.: (a) "To secure to it the payment of any sum or sums of money which, *at the date of any settlement of the policy*, may be due and owing from me for any moneys which I may have received from it, or which it may have paid or be liable to pay for me, or for premiums on the said policy with interest;" and (b) to pay the balance to any person entitled thereto according to the terms of the policy. This is not an agreement as to the ascertainment or determination of the *value of the policies as a security* even if construed as an agreement to defer payment of the notes secured thereby in case it should become necessary to realize on the securities. It cannot reasonably be construed into an agreement to wait until the death of the insured in case of bankruptcy, pay the premiums in the meantime, collect the policy, deduct the notes or the balance due and premiums paid, and pay over the balance, if any, to the person or persons entitled thereto, and that the value of the security as such can be determined in no other way. As a secured creditor the bank has the right to have the value of the securities as such determined, and to have that value deducted from the amount due or unpaid on the notes and have a dividend on the balance. This is true even if ultimately the persons entitled to the surplus of the policies, if any, may call on the bank to account. It is not necessary to decide that question. The bank is a secured creditor, and as such is entitled to have the value of its security determined, deducted, and receive a dividend on the balance of its claim. I do not think this action will cut off any right others may have in the proceeds of the policies on their maturity. But if so, that fact cannot affect the right given by the law itself. The assignment as security cannot be construed as a waiver of the right to share in the property of the bankrupt in case of bankruptcy. The debt owing the bank evidenced by the notes is now due. The policies at maturity—the death of the insured—may be worth more and produce more money than is then due the bank, in which case, quite likely, under the wording of these assignments the bank may be liable to account for such surplus. In re Newland, Fed. Cas. No. 10,171, 9 Nat. Bankr. Reg. 62. On the other hand, the policies may be worth nothing whatever, taking into account the premiums the holder will be compelled to pay to keep them alive and the interest on such premiums. Taking into consideration all the facts, amount of the policies, premiums paid and to be paid, probably, the probable duration of the life of the insured, the privileges or options that may be exercised under the terms of the policies, and the value of the exercise of such options, the court has fixed the present value of such policies as a security, and the mode adopted in getting at this is not challenged. If the bank had exercised, assuming it had the power so to do, either of the options, it would not have realized on its debt more than it has been compelled to credit.

The Citizens' National Bank also contends that the bank should be compelled to surrender these policies to the trustee for the benefit of the estate, if allowed the present value of the policies as determined

by the referee in bankruptcy to apply on the debt and a dividend on the balance, as has been done, and that it was error to refuse to provide for a surrender. The contention seems to be that having procured the present value of the securities to be determined and having received that value to apply on the debt, and having, also, taken a dividend, pro rata, with the others on the balance of the debt, the interest of the bank in such securities has ceased, and the equity, if any, belongs to the estate. But the bank has the policies as securities for the entire debt and must pay therefor their present value by crediting the amount on the debt before having a dividend on the balance. Sections 57a, 57e, 57h. The law does not provide that on crediting the value of the security on the debt, and being allowed a dividend on the balance, the secured creditor is to surrender the security, even if tendered the value thereof as fixed by the court. The secured creditor has the right to retain the policies as security for any balance and any premiums it may pay to keep them alive. In re Frank F. Newland, Fed. Cas. No. 10,170, 7 Nat. Bankr. Reg. 477. The policies belong to the bank as security until the debt is paid, but for purposes of a dividend, as well as ultimate payment, it is compelled to credit now the value of such security. It does not follow that the policies and all sums received thereon at maturity will become or now become the property of the bank absolutely, for the ownership is a qualified one, I think, but the bank cannot be deprived of them until the notes are fully paid. In re Frank F. Newland, Fed. Cas. No. 10,170, 7 Nat. Bankr. Reg. 477. These policies were assigned to the bank in good faith more than four months before the bankruptcy, and the rights of the bank therein and thereto are in no way affected by the bankruptcy except that it is compelled, if it elects to prove its claim, to credit the present value, as fixed in the mode provided by the act, on the debt, and I do not think this operates as an absolute sale and transfer to the bank.

It is useless to speculate as to what the rights of the parties might have been or would be had the trustee or creditors offered to purchase the policies at a greater sum than the court or referee fixed as their value. Probably such offer or offers would have determined that their value was at least that sum, but, even then, the bank was not under obligation to let the policies go, except to some one willing to pay more than it would. Here, so far as appears, the trustee did not offer to purchase the policies or tender the amount fixed as their value and demand their surrender. Clearly, the bank cannot be compelled to part with its securities for a debt, there being no preference, until its debt is paid in full, except in case the securities are sold or converted into cash, and in such case it is entitled to the proceeds of the sale or conversion to apply on the debt. The bank cannot be compelled to part with or surrender its security for the reason it receives a dividend, or as a condition of receiving a dividend, after crediting the present value of the security as determined by arbitration or by litigation as the court directs. It is, of course, true that the trustee became the owner of all these policies subject to the rights of the bank. He took them in the same plight and condition and subject to the same equities

as the insured held them, and that condition was that the bank had the right to hold them as security for the entire debt, keep them alive by paying the premiums, and collect and apply the proceeds at maturity on such debt, or to dispose of them under the laws relating to pledges. The trustee had the right to redeem these policies on paying the debt due the bank, for the benefit of the estate. But I find no evidence of any offer to do this.

The bankruptcy law in plain terms says that in such a case as this the secured creditor may prove his debt, have the value of his security determined, credit such value, and have a dividend on the balance except in cases where the contract of pledge provides a way of converting it into money, in which case that is to be done under and pursuant to the terms of the contract or agreement under which the thing pledged is held. In the absence of something in the bankruptcy act to the contrary I am of the opinion that, in cases where the value of the security is determined by agreement, arbitration, or litigation as the court directs, it is contemplated that the secured creditor is to retain such securities, after receiving the dividends, subject to such claims as others may have therein or thereon when finally converted into money. With this the contract of pledge may have something to do while in cases where the contract is silent the rights of the parties would be determined by the general rules of law applicable. This seems to have been the ruling under the prior bankruptcy act, the provisions of which, in this regard, were substantially the same as those of the present law. See cases cited. The Citizens' National Bank does not point out any error in the rulings of the referee or in the mode of arriving at the value of the policies which operates to the injury of that bank, a creditor of the bankrupt. Clearly borrowing under the options or taking paid-up policies would not have given a greater value than was fixed by the referee. I do not see that the policies could have been converted into cash in any way that would have produced more than $3,500. I am not called upon to decide what the rights of the parties or of the trustee would be should the insured die before the estate is finally closed, or even thereafter.

I do not find it necessary to pass upon the question raised by the First National Bank, that the order providing for fixing the value by litigation and the order fixing such value cannot now be reviewed, for the reason a petition for the review thereof was not filed in time, although it would seem that the point is well taken. Bacon v. Roberts, 146 Fed. 729, 77 C. C. A. 155; In re Holmes, 142 Fed. 391, 73 C. C. A. 491; In re Chambers Calder & Co., 6 Am. Bankr. Rep. 709; In re Grant, 16 Am. Bankr. Rep. 256, 143 Fed. 661. And see prior opinion of this court in Re Nichols, 22 Am. Bankr. Rep. 216, 220, 221, 166 Fed. 603.

The orders of the referee are affirmed.